CONTINENTAL CASUALTY
COMPANY, Petitioner,

v.

Mary Ann DOWNS, Beneficiary of
Raymond Downs, deceased,
Respondent.

No. 00–1309.

Supreme Court of Texas.

Argued Oct. 24, 2001.

Decided June 6, 2002.

Rehearing Denied Aug. 30, 2002.

David L. Brenner, Joe R. Anderson, Kristin Lee Gustavson, Burns Anderson Jury & Brenner, Austin, Timothy K. Singley, Thornton Summers Biechlin Dunham & Brown, San Antonio, for Petitioner.

Kenneth W. Howell, Law Office Of Miller & Henderson, San Antonio, for Respondent.

Justice HANKINSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, and Justice O'NEILL joined.

In this cause we interpret provisions of the Texas Workers' Compensation Act (the Act) governing when a workers' compensation carrier must notify a claimant that the carrier is refusing to pay benefits. *See* TEX. LAB.CODE §§ 409.021, 409.022. The district court granted summary judgment for the carrier on the basis that it had timely contested compensability even though it had not timely notified the claimant that it was refusing to pay benefits. The court of appeals reversed and rendered judgment for the claimant, and remanded the issue of attorney's fees. 32 S.W.3d 260. We conclude that under Texas Labor Code §§ 409.021 and 409.022, a carrier that fails to begin benefit payments as required by the Act or send a notice of refusal to pay within seven days after it receives written notice of injury has not met the statutory requisite to later contest compensability. We accordingly affirm the court of appeals' judgment.

Respondent Mary Ann Downs timely filed a claim for workers' compensation benefits after her husband's fatal heart attack. Petitioner Continental Casualty Company provided workers' compensation insurance to her husband's employer. Continental first notified Downs that it disputed the compensability of her claim forty-eight days after it received notice of the injury. The parties proceeded to a benefit-review conference and then a contested-case hearing at the Texas Workers' Compensation Commission. The hearing officer determined that Downs' husband's heart attack was not compensable and that Continental had timely contested compensability. An appeals panel affirmed that decision. Having exhausted her administrative remedies, Downs sought judicial review in the district court. The parties filed cross-motions for summary judgment, and the court granted summary judgment for Continental, affirming the Commission's decision. Downs appealed, complaining only of the determination that Continental had timely disputed compensability. The court of appeals reversed and rendered judgment in favor of Downs, and it remanded Downs' claim for attorney's fees to the district court. 32 S.W.3d at 264. It held that because Continental had not timely notified Downs of its refusal to pay benefits, it could not contest compensability. *Id.*

Continental petitioned this Court for review, contending that the court of appeals' interpretation of Labor Code §§ 409.021 and 409.022 deprives carriers of the statutory sixty-day deadline to contest compensability and imposes an additional pen-

alty not reflected in the statutory scheme for failure to meet the seven-day pay-or-dispute deadline. It further argues that the court of appeals' interpretation is contrary to the Commission's interpretation and application of the statutes. Downs responds that the Commission's interpretation is at odds with the language of sections 409.021 and 409.022, and that to read those provisions as Continental proposes would defeat the Legislature's express intent that workers receive either prompt payment or notice of denial of compensation claims.

■■■ As we are called upon to interpret what the parties agree are the controlling provisions of the Labor Code, we begin by reviewing the relevant principles of statutory construction. The goal of statutory construction is to give effect to legislative intent. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex.2000); *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex.1996); *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). Unless a statute is ambiguous, we discern that intent from the language of the statute itself. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999); *RepublicBank Dallas v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985); *see also* Tex. Gov't Code § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Further, we consider a statute as a whole, not its provisions in isolation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001); *Fitzgerald*, 996 S.W.2d at 866.

■■■ Labor Code chapter 409 sets out the procedures that employees, employers, and carriers must follow when an employee seeks workers' compensation benefits after suffering an injury on the job. Tex. Lab.Code §§ 409.001–.044. Subchapter B,

entitled "Payment of Benefits," specifies what a carrier must do, and when, after it receives written notice of an injury. *Id.* §§ 409.021–.024. Section 409.021(a) mandates that carriers must do one of two things within seven days after receiving written notice of injury-begin paying benefits as required by the Act or give written notice of refusal to pay benefits:

> An insurance carrier shall initiate compensation under this subtitle promptly. Not later than the seventh day after the date on which an insurance carrier receives written notice of an injury, the insurance carrier shall:
>
> (1) begin the payment of benefits as required by this subtitle; or
>
> (2) notify the commission and the employee in writing of its refusal to pay
>
> . . . .

*Id.* § 409.021(a). By directing that insurance carriers "shall" either begin payment as required by the Act or send notice of refusal, the Legislature imposed a duty on carriers to take one of those actions within seven days. *See* Tex. Gov't Code § 311.016(2) (generally, use of the word " '[s]hall' imposes a duty"); *see also Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999) ("We generally construe the word 'shall' as mandatory, unless legislative intent suggests otherwise.").

■■■ Section 409.022 expands on what the notice of refusal must contain and what effect the notice has on further proceedings. Tex. Lab.Code § 409.022. Section 409.022(a) explains that a carrier's "notice of refusal to pay benefits under Section 409.021 must specify the grounds for the refusal." *Id.* § 409.022(a). The next subsection explains that except for newly discovered evidence, a carrier is bound by the grounds for refusal it specifies in the notice of refusal: "The grounds for the refusal specified in the notice constitute the

only basis for the insurance carrier's defense on the issue of compensability in a subsequent proceeding, unless the defense is based on newly discovered evidence that could not reasonably have been discovered at an earlier date." *Id.* § 409.022(b). Thus, if a carrier timely sends its notice of refusal it may continue to investigate, but absent newly discovered evidence, has limited its defenses on the issue of compensability to the grounds for refusal specified in the notice. *Id.*

 Giving effect to all the language in both sections 409.021 and 409.022, and keeping in mind the legislative goal of providing employees with either prompt payment or notice of denial of benefits, the following propositions are clear: (1) under section 409.021(a), a carrier must initiate benefits as required by the Act or file a notice of refusal; (2) under section 409.021(c), a carrier who initiates benefits may take up to sixty days to investigate or deny compensability for any valid reason; and (3) under section 409.022(b), a carrier who files a notice of refusal may investigate or deny compensability, but is limited to the grounds specified in the notice as bases for contesting compensability, except for newly discovered evidence. Therefore, a carrier that has neither initiated benefits nor filed a notice of refusal has not complied with the statutory requisite, and has failed to trigger the sixty-day period to investigate or deny compensability.

It is also clear that by mandating that carriers either initiate benefits as required by the Act or send a notice of refusal within the short seven-day deadline, the Legislature intended to provide employees with a prompt response to their benefit claims and to streamline the process to avoid early attorney involvement. *See* 1 Montford et al., A Guide to Texas Workers' Comp Reform 5–52 (1991) ("Section [409.021] significantly accelerates the 'pro-

cessing time' for carriers either to initiate benefit payments . . . or to contest compensability. Promptness of the initial comp payment was considered an important reform objective since delays in initiating benefits under the prior law at times resulted in hardship upon the employee and a need . . . for early attorney involvement."). The Legislature further sought to encourage carriers to initiate benefit payments by providing an unfettered basis to deny compensability for up to sixty days if benefits are initiated, but limiting a carrier who refuses to pay to the ground specified in a notice of refusal, unless the carrier discovers new evidence it could not reasonably have discovered earlier. *See* Tex. Lab.Code § 409.022(b); *see also id.* §§ 409.022(c) (stating that carrier commits administrative violation if it "does not have reasonable grounds for a refusal to pay benefits"), 415.002(18) (stating that carrier commits administrative violation if it "controverts a claim if the evidence clearly indicates liability"). Thus, interpreting the legislative scheme to require carriers to comply with the seven-day deadline to trigger the sixty-day period to investigate or deny compensability gives meaning to all the provisions of both sections 409.021 and 409.022, and strikes a balance between the injured employee's interest in obtaining prompt payment of benefits or notice of refusal and the carrier's interest in investigating valid grounds for refusal.

Continental's construction, by contrast, renders meaningless: (1) the seven-day deadline of section 409.021(a); (2) the incentive of unlimited bases for denial of compensability for carriers who initiate payments as provided in the second sentence of section 409.021(c); and (3) all the limitations regarding notices of refusal in section 409.022. That construction would permit carriers to do nothing, thereby delaying benefits and eliminating the statuto-

ry requirement of early notice of denial that gives employees certain protections, and permit carriers to take up to sixty days to investigate without paying benefits or risking being bound by an earlier ground for refusal. Although the parties and the court of appeals label the consequence for failure to meet the seven-day pay-or-dispute deadline a "waiver," that is not precisely what happens under the statutory scheme. We are presented not with a question of waiver, but of a deadline (seven days to pay or dispute), and a consequence for failing to meet that deadline (a carrier that does nothing fails to avail itself of the sixty-day period to investigate or deny compensability). Both the deadline and the consequence are clearly chosen and clearly expressed by the Legislature.

Continental urges that this interpretation of the statute creates a penalty in addition to the potential administrative penalty set out in section 409.021(e), and that an administrative penalty is a sufficient incentive for carriers to comply with the notice requirement. Yet Continental was apparently not penalized in this case, and it has not cited any instance in which any carrier has been penalized for violating section 409.021(a). Nor has the Texas Workers' Compensation Commission as amicus curiae represented that it does or has in fact penalized carriers for failing to comply with the seven-day deadline. The administrative penalty Continental claims is a sufficient incentive is itself discretionary. TEX. LAB.CODE § 415.021 ("The commission may assess an administrative penalty against a person who commits an administrative violation."). The fact that the Commission has the discretion to impose an administrative penalty does not make the Legislature's language imposing the seven-day rule any less mandatory, or the consequences of violating the rule any less clear.

██ Moreover, that the Commission agrees with Continental's construction of the statute does not make that construction any more persuasive. Construction of a statute by the agency charged with its enforcement is entitled to serious consideration only if that construction is reasonable and does not contradict the statute's plain language. *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993); *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (1944). The construction advanced by the Commission is, we conclude, at odds with the statute's mandatory language. That construction has the perverse effect of encouraging a carrier not to file a notice at all—the carrier that does nothing may investigate for sixty days and then deny compensation for any reason. And that carrier, who has violated the statute's language, is in the same position as a carrier who initiates benefits. But the carrier that fulfills its statutory duty to send a notice of refusal and puts the wrong reason in the notice can deny compensation for that reason only. *See Vanliner Ins. Co. v. Ward*, 923 S.W.2d 29, 31–32 (Tex.App.-Texarkana 1996, no writ).

The Legislature has mandated that carriers must initiate benefits as required by the Workers' Compensation Act or notify a claimant that it refuses to pay within seven days of when the carrier receives notice of the injury. Taking some action within seven days is what entitles the carrier to a sixty-day period to investigate or deny compensability. Because Continental neither initiated benefits nor provided grounds for refusal within this statutory deadline, it may not now contest compensability. Accordingly, we affirm the court of appeals' judgment.

Justice JEFFERSON filed a dissenting opinion, in which Justice HECHT, Justice OWEN, and Justice RODRIGUEZ joined.

Justice JEFFERSON filed a dissenting opinion, in which Justice HECHT, Justice OWEN, and Justice RODRIGUEZ joined.

The statute says: "If an insurance carrier does not contest the compensability of an injury on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability." TEX. LAB.CODE § 409.021(c).[1] The statute does not compel the carrier to meet that deadline but gives a dramatic consequence—forfeiture of all rights to contest the claim—if it does not. Continental avoided waiver by disputing the claim in writing before the sixtieth day. The Court nevertheless holds that Continental forfeited its rights to contest the claim because it neither began payment nor contested the claim within seven days after it received written notice of Mr. Downs' heart attack. 81 S.W.3d at 804 (citing TEX. LAB.CODE § 409.021(a)).

The concept of waiver is nowhere to be found in section 409.021(a). Instead, the statute imposes administrative penalties for noncompliance with the seven-day deadline—penalties that, unlike the Court's forfeiture holding, are explicit in the statute itself. Careful to avoid use of the term "waiver," the Court finds its equivalent in an aura of legislative intent encircling the statute. I believe it is more appropriate to locate legislative intent in the Legislature's words. The words, in this case, are not ambiguous.

The Court reveals the weakness in its analysis when it considers whether the penalties are sufficient, or sufficiently enforced, to encourage carriers to meet the seven-day deadline. Political questions such as those should not infect our analysis of the statute's meaning. As we have often said, "The wisdom or expediency of the law is the Legislature's prerogative, not ours." *Weiner v. Wasson,* 900 S.W.2d 316, 330 (Tex.1995)(quoting *Texas Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995)); *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex.1968). Our only task here is to construe the Legislature's work. The Court fails that task today. By finding forfeiture in a statute's unwritten text when the written text imposes no more than an administrative penalty, the Court appropriates a legislative function. I respectfully dissent.

1. Texas Labor Code section 409.021 provides:
 (a) An insurance carrier shall initiate compensation under this subtitle promptly. Not later than the seventh day after the date on which an insurance carrier receives written notice of an injury, the insurance carrier shall:
 (1) begin the payment of benefits as required by this subtitle; or
 (2) notify the commission and the employee in writing of its refusal to pay and advise the employee of:
 (A) the right to request a benefit review conference; and
 (B) the means to obtain additional information from the commission.
 . . . .
 (c) If an insurance carrier does not contest the compensability of an injury on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability. The initiation of payments by an insurance carrier does not affect the right of the insurance carrier to continue to investigate or deny the compensability of an injury during the 60–day period.
 (d) An insurance carrier may reopen the issue of the compensability of an injury if there is a finding of evidence that could not reasonably have been discovered earlier.
 (e) An insurance carrier commits a violation if the insurance carrier does not initiate payments or file a notice of refusal as required by this section. A violation under this subsection is a Class B administrative violation. Each day of noncompliance constitutes a separate violation.

## I.

The statute before us is not ambiguous. Not later than the seventh day after receiving written notice of an employee's injury, a carrier must either begin paying benefits or notify the commission and employee of its refusal to pay. TEX. LAB.CODE § 409.021(a). Section 409.021(e) describes the consequence of noncompliance: "An insurance carrier commits a violation if the insurance carrier does not initiate payments or file a notice of refusal . . ." within seven days after receiving written notice of an injury. The Class B administrative violation is punishable by maximum fines of $5,000 per day. TEX. LAB.CODE § 415.022(2). No other consequence is mentioned in the statute. The only express waiver provision in section 409.021, found in subsection (c), provides that "the insurance carrier waives its right to contest compensability" if it does not dispute the claim on or before the sixtieth day after receiving notice of the injury. All agree that Continental contested compensability before the sixtieth day. We must determine, then, whether Continental, having avoided the only waiver provision in the subsection, is permitted to litigate whether Downs' claim is compensable.

For more than a decade, the Workers' Compensation Commission has recognized that carriers in Continental's position have a legal right to litigate the claim's compensability. In 1992, the Workers' Compensation Commission construed former Article 8308–5.21 to mean that a failure to comply with the seven-day deadline subjects carriers to administrative fines, but not waiver. *See* Tex. Workers' Comp. Comm'n, Appeal No. 92122, 1992 WL 358230 (May 4, 1992); Tex. Workers' Comp. Comm'n, Appeal No. 92532, 1992 WL 373451, at *4 (Nov. 13, 1992). The Commission has consistently construed section 409.021 as it did Article 8308–5.21. *See* Tex. Workers' Comp. Comm'n, Appeal No. 960949, 1996 WL 367060, at *6 (June 28, 1996); Tex. Workers' Comp. Comm'n, Appeal No. 950944, 1995 WL 481670, at *5 (July 24, 1995). Under the Commission's view,

> [If a carrier fails to comply with section 409.021(a)], the carrier is not precluded from thereafter filing a notice of refusal . . . . However, when the carrier subsequently files its notice of refusal, the grounds for the refusal specified in the notice constitute the only basis for the carrier's defense on the issue of compensability in a subsequent proceeding, unless the defense is based on newly discovered evidence, pursuant to Section 409.022(b). When the carrier refuses to pay benefits and fails to file its [notice of refusal] timely (i.e., within seven days), [the] carrier is subject to an administrative penalty but may still dispute compensability, but [the Commission] will consider that notice of refusal under the same rules as the notice of refusal filed within seven days.

Tex. Workers' Comp. Comm'n, Appeal No. 960949, 1996 WL 367060, at *6 (June 28, 1996). We should defer to the Commission's construction because it is reasonable. TEX. GOV.CODE § 311.023(6). And, unlike the Court's view, the Commission's interpretation gives meaning to *all* the provisions in the statute and does not ignore or delete relevant provisions. As we recognized in another context, "great benefit is to be derived from a uniform interpretation of laws, rules and regulations by an administrative body whereas different results might be reached under similar fact situations by various courts or juries." *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 413 (1961).

The Court says the Commission's construction "has the perverse effect of encouraging a carrier not to file a notice at

all." While strong on rhetoric, that assertion fails upon close analysis. The Court's "perverse" conclusion rests on the assumption that insurance carriers, who process untold numbers of claims each year, are indifferent to the assessment of penalties accumulating at a maximum rate of $5,000 per day. At that rate, the penalty for just one claim, assessed over a fifty-three-day period, would exceed $250,000. In all but the most severe injury cases, a fine of that magnitude would most certainly dwarf the benefits paid. It is difficult, then, to understand the Court's conclusion that the Commission's construction of the statute would "encourage" a carrier to ignore section 409.021(a).

The Court's interpretation has perverse consequences of its own. The seven-day deadline in section 409.021(a) is extremely short—especially in light of the rapid investigation the carrier must undertake within that truncated period. Most carriers will meet that deadline, if only because they have a financial interest in avoiding crippling administrative fines. But what of those whose failure to pay or contest is not intentional, but the result of an accident, mistake, or inadvertence? The practical consequence of the Court's holding is that a carrier will have no right to contest even the most frivolous claim if, by virtue of a clerical error or other mistake, it misses the seven-day deadline by one hour. The statute does not compel such a draconian result.

## II.

The Court's blunt imposition of this new death penalty contrasts sharply with the Legislature's preference that the Commission impose penalties only after a measured consideration of the circumstances giving rise to the offense and the relative culpability of the carrier. The Legislature asked the Commission to weigh several factors when determining the severity of a sanction under section 409.021(a):

(1) the seriousness of the violation, including the nature, circumstances, consequences, extent, and gravity of the prohibited act;

(2) the history and extent of previous administrative violations;

(3) the demonstrated good faith of the violator, including actions taken to rectify the consequences of the prohibited act;

(4) the economic benefit resulting from the prohibited act;

(5) the penalty necessary to deter future violations; and

(6) other matters that justice may require.

Tex. Lab.Code § 415.021. Obviously, the Legislature did not envision, as the Court proposes, strict liability as punishment for violating section 409.021(a). Instead, it delegated to the Commission discretion to make the punishment fit the violation. Carriers violating the statute mistakenly, or demonstrating good faith, will presumably suffer a sanction less severe than repeat offenders or carriers who intentionally thwart the statute for strategic or economic purposes. Today, however, the Court's uniform forfeiture penalty renders meaningless the nuanced factors in section 415.021.

The Court does not stop there. The forfeiture provision engrafted by the Court effectively repeals section 409.021(e), which, after today, no longer serves its intended purpose. Section (e) provides:

An insurance carrier commits a violation if the insurance carrier does not initiate payments or file a notice of refusal as required by this section. A violation under this subsection is a Class B administrative violation. Each day of non-

compliance constitutes a separate violation.

TEX. LAB.CODE § 409.021(e). Under the Court's holding, a carrier failing to contest or pay within seven days loses the right to contest compensability altogether. That carrier would no longer have an obligation to "file a notice of refusal" under section 409.021(e), because the Court decides that the carrier automatically forfeited the right to refuse payment. If it fails to pay those benefits when they accrue on the eighth day, the carrier violates sections 409.023(a) and (c). TEX. LAB.CODE § 409.023(a)("An insurance carrier shall continue to pay benefits promptly as and when the benefits accrue . . . ."); TEX. LAB. CODE § 409.023(c)("An insurance carrier commits a violation if the insurance carrier fails to comply with this section. A violation under this subsection is a Class B administrative violation."). Today's holding, then, displaces section 409.021(e) altogether and thereby refutes the Court's claim to have given effect to "all the language in both sections 409.021 and 409.022." 81 S.W.3d at 806.

The Court suggests erroneously that the Legislature's penalty provision is pointless because the Commission is not *required* to impose a penalty for violations of section 409.021(a). The Court has misread the statute. Chapter 415 governs administrative violations. Under that chapter, any person may request in writing that a carrier be sanctioned for administrative violations. TEX. LAB.CODE § 415.031. The party so charged must either respond or be penalized by default. TEX. LAB.CODE § 415.033. If a penalty is not assessed under section 415.033 for failure to respond, the affected parties are entitled to a hearing before the State Office of Adminis-

trative Hearings. TEX. LAB.CODE § 415.034(a). The statute then provides: "If the hearing officer determines that an administrative violation has occurred, the hearing officer *shall* include in the decision the amount of the administrative penalty assessed and *shall* order payment of the penalty." TEX. LAB.CODE § 415.034(b)(emphasis added). Consequently, the *amount* of the penalty, but not the penalty itself, is subject to the Commission's discretion when a violation is proved under chapter 415.

### III.

Finally, although the Court purportedly applies a plain-language analysis, the Court allows evidence outside the record to color its statutory interpretation. It observes that "Continental was apparently not penalized in this case, and has not cited any instance in which any carrier has been penalized for violating section 409.021(a). Nor has the Texas Workers' Compensation Commission as amicus curiae represented that it does or has in fact penalized carriers for failing to comply with the seven-day deadline." 81 S.W.3d at 807. From this absence of evidence, the Court suggests that the Legislature's provision for administrative fines is not sufficient to encourage carriers to contest or pay within seven days. But there is no evidence in the record pertaining to the frequency or severity of fines.

Assuming what the Court presupposes is true—that fines are imposed infrequently—our task is nevertheless limited to interpreting the applicable statutes. The extent to which administrative sanctions are enforced is a matter best left to the Legislature or Commission.[2] We should

---

2. *See Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)("[A]n agency decision not to enforce often involves

a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess wheth-

not alter a legislative scheme to supplement an enforcement mechanism the Legislature has delegated to the Commission, even if the evidence conclusively established that the Commission has not penalized carriers in the past. Although the Court may disagree with the manner in which the Commission has exercised its discretion, the Court should not usurp that discretion. And the Court's concerns regarding enforcement should not serve as a basis for inserting into section 409.021(a) a sanction that appears only in section 409.021(c).

#### IV.

In *Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 961 (Tex.1999), we stated: "When [a] statute is silent about [the] consequences of noncompliance, [then] we look to the statute's purpose in determining the proper consequence of noncompliance." The statute before us is *not* silent as to the consequence of noncompliance with sections 409.021(a) and 409.021(c). The Legislature has declared in plain terms that noncompliance with the seven-day deadline in section 409.021(a) is a violation punishable by administrative penalties and noncompliance with the sixty-day deadline in section 409.021(c) is waiver of the right to contest compensability.

The Court unjustifiably dispenses with the statute's plain language and enacts a forfeiture provision that the Legislature never promulgated. In doing so, it alters a fundamental aspect of the Workers' Compensation system that has been applied consistently for more than a decade. We cannot know today the particular repercussions the Court's decision will un-

leash, but one thing is clear: Agency discretion has been dealt a serious blow, as has the idea that penalties should be no more severe than necessary to satisfy legitimate purposes.

I would reverse the court of appeals' judgment. Because the Court holds otherwise, I respectfully dissent.

er a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing.").