HOUSTON PROFESSIONAL FIRE FIGHTERS' ASSOCIATION, Local 341; Steven D. Williams, Individually and as President of Local 341, Appellants,

v.

CITY OF HOUSTON; Fire Chief Christopher Connealy, Appellees.

No. 01–03–00582–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 20, 2005.

---

Richard C. Mumey, Houston, TX, for Appellants.

John E. Fisher, Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

This is an appeal from a summary judgment rendered in favor of appellees, former Fire Chief Christopher Connealy and the City of Houston ("the City"). Appellants, Houston Professional Fire Fighters Association et al. ("HPFFA"), filed a suit challenging the City's practice of assigning Houston Fire Department ("HFD") cadets to ambulance duty in contravention of the Texas Local Government Code, Chapter 143 and the Code of Ordinances of the City of Houston, Section 4–9. On appeal, the issue is whether fire department cadets, by being assigned to HFD ambulances to perform emergency medical services, are performing functions reserved for classified fire fighters, thereby displacing classified fire fighters in contravention of Chapter 143 and Section 4–9. We affirm.

## BACKGROUND

Starting in the early 1970s, classified fire fighters exclusively delivered emergency medical services for HFD. Fire department cadets were not permitted to deliver emergency medical services within the City of Houston. The cadets at issue in this case are certified Emergency Medical Technicians ("EMT"), but are not yet state-certified as firefighting personnel. On November 16, 2001, Fire Chief Christopher Connealy distributed a memorandum describing a new HFD program ("EMT program") that became effective on November 17, 2001. The EMT program permitted the assignment of fire department cadets to HFD ambulances. Pursuant to the EMT program, cadets now perform emergency medical functions on HFD ambulances. Cadets and classified fire fighters are currently performing the same kind of work in terms of patient care while assigned to HFD ambulances.

HPFFA filed a suit for declaratory judgment contending that only classified fire fighters may perform the functions and jobs regularly performed by classified fire fighters. HPFFA also sought to permanently enjoin the City (1) from using non-classified employees, which includes cadets according to HPFFA, to do functions regularly performed by classified fire fighters and (2) from denying HFD fire fighters their back pay and benefits. HPFFA contends that the City was displacing classified fire fighters in contravention of both Chapter 143 of the Texas Local Government Code, commonly referred to as the Police Officers' and Fire Fighters' Civil Service Act, ("Chapter 143") and Section 4–9 of the Code of City Ordinances of the City of Houston ("city ordinance"). HPFFA argues that the EMT program violates Chapter 143 because the statute requires positions within HFD to be filled by classified fire fighters. HPFFA claims that cadets are not classified fire fighters because (1) cadets have not been appointed in substantial compliance with the requirements of Chapter 143, (2) cadets are not included in the city's classification ordinance,[1] and (3) cadets have not completed the fire training curriculum required by Chapter 419 of the Texas Government Code.[2] HPFFA argues that the EMT program violates Section 4–9 of the Houston City Ordinance because the ordinance prohibits anyone except HFD's classified fire fighters from delivering medical services while driving HFD ambulances in Houston.

The City filed a motion for summary judgment attacking HPFFA's arguments regarding Chapter 143 and the city ordinance.[3] HPFFA filed a response and a partial motion for summary judgment. On March 19, 2003, the court granted the City's motion for summary judgment and denied HPFFA's partial motion for summary judgment. HPFFA filed a motion for new trial, but the trial court denied its motion after a hearing.

In its sole issue on appeal, HPFFA contends that the trial court erred by denying its partial motion for summary judgment and granting the City's motion for summary judgment. HPFFA argues that cadets are not classified fire fighters and, pursuant to the EMT program, cadets are displacing classified fire fighters in violation of Chapter 143 and Section 4–9 of the Houston City Ordinance.

## DISCUSSION

In reviewing a summary judgment, an appellate court must consider whether the successful movant at the trial level carried its burden of showing that there was no genuine issue of material fact and that judgment should be rendered as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

---

1. Section 143.021 of the Texas Local Government Code requires that the local Civil Service Commission provide for the classification of all fire fighters and that the municipality's governing body establish the classifications by ordinance. TEX. LOC. GOV'T CODE ANN. § 143.021(a) (Vernon 1999).

2. Section 419.032 of the Texas Government Code requires completion of a fire training curriculum of all classified fire fighters, except for those appointed to the fire department "on a temporary or probationary basis."

TEX. GOV'T CODE ANN. § 419.032(a) (Vernon 1998).

3. During the proceedings below, appellants argued that the City had improperly characterized its motion for summary judgment as a no-evidence motion for summary judgment under Texas Rule of Civil Procedure 166a(i). However, the trial court treated the City's motion as a traditional motion for summary judgment. The trial court's treatment is not challenged on appeal.

We assume all of the non-movant's evidence is true and indulge every reasonable inference in favor of the non-movant. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). If the movant can show it is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a fact issue to defeat the motion for summary judgment. *Haight v. Savoy Apartments,* 814 S.W.2d 849, 851 (Tex.App.-Houston [1st Dist.] 1991, writ denied). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *See Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). The reviewing court should render such judgment as the trial court should have rendered. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). When the trial court's order does not specify the grounds on which a motion for summary judgment was granted, we will affirm the summary judgment if any of the theories advanced in the motion is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996).

Because this appeal requires us to interpret sections of the Local Government Code, we restate the basic principles of statutory construction. Interpreting statutes is a legal matter, subject to de novo review. *Bragg v. Edwards Aquifer Auth.,* 71 S.W.3d 729, 734 (Tex.2002). The overriding goal of statutory interpretation is to determine the legislature's intent. *Cont'l Cas. Co. v. Downs,* 81 S.W.3d 803, 805 (Tex.2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the Legislature. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998 & Supp.2004); *Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 529 (Tex.2002).

### What is a HFD Cadet?

The threshold issue is whether, by assigning cadets to HFD ambulances to perform emergency medical services, non-classified HFD employees are performing the functions reserved for classified fire fighters, in contravention of Chapter 143.

Section 143.003 of Chapter 143 provides:

> "Fire fighter" means a member of a fire department who was appointed in substantial compliance with this chapter or who is entitled to civil service status under Section 143.005 or 143.084. The term includes employees who perform:
>
> (A) fire suppression;
>
> (B) fire prevention;
>
> (C) fire training;
>
> (D) fire safety education;
>
> (E) fire maintenance;
>
> (F) fire communications;
>
> (G) fire medical emergency technology;
>
> (H) fire photography;
>
> (I) fire administration; or
>
> (J) fire arson investigation.

TEX. LOC. GOV'T CODE ANN. § 143.003(4) (Vernon Supp.2004–2005). Section 143.021 provides, "The commission shall provide for the classification of all fire fighters and police officers. The municipality's governing body shall establish the classifications by ordinance. The governing body by ordinance shall prescribe the number of positions in each classification." TEX. LOC. GOV'T CODE ANN. § 143.021(a) (Vernon Supp.1999).

■ The outcome of this case is determined by whether a cadet is a classified position within the HFD. HPFFA argues that cadets are not classified fire fighters. In support of its motion, the City argues

that a cadet is a classified position and that there is no genuine issue of material fact.

■ According to Fire Chief Connealy, a cadet is "an individual that's hired by the City to be trained as a firefighter." Under the EMT program, cadets are first trained at the fire academy for approximately five weeks solely for emergency medical care at the level of an emergency medical technician. Once a cadet has been certified by the State as an EMT, the cadet is assigned to an HFD ambulance where he works with an engineer operator EMT or a state-certified fire fighter EMT. On these ambulances, cadets are "doing the same job in the capacity of patient care" as classified fire fighters. It is only *after* the cadets have worked on HFD ambulances for approximately 20 weeks in compliance with the EMT program that they return to the academy to complete training in fire fighting techniques[4] in order to gain their state-certification as fire fighting personnel.[5]

Historically, cadets or trainees[6] were treated as non-classified employees. Before January 1, 2002, HFD cadets or academy trainees were not administered the civil service entrance examination until *after* they had completed their training at the fire academy. However, as a result of a Consent Decree and the settlement of litigation in *Nugent v. City of Houston,* challenging the timing of HFD's administration of its civil service examination, the City, since 2002, has administered the entrance examination *prior* to the cadet's entry into the academy as part of the initial hiring process under Chapter 143. *See Nugent v. City of Houston,* 159 F.Supp.2d 529, 534 (S.D.Tex.2001) (finding that City of Houston's administration of entrance examination after fire department cadets have received six months of academy training violated Chapter 143 of Texas Local Government Code).

**Classification Analysis**

**A. Definition of Fire Fighter**

To determine whether a cadet is a classified position, we must determine whether cadets are "fire fighters" within the protection of Chapter 143. Chapter 143's statutory definition of a "fire fighter" includes "a member of a fire department who was appointed in substantial compliance with this chapter" and includes, but is not limited to, those employees who perform "fire medical emergency technology."[7] TEX. LOC. GOV'T CODE ANN. § 143.003(4) (Vernon Supp.2004–2005). Chapter 143 does not provide a definition

---

4. Because cadets have not yet completed the state-certification training for fire fighting personnel when they are assigned to HFD ambulances in accordance with the EMT program, this last stage of training is not part of our analysis.

5. HPFFA cites to Section 419.032 of the Texas Government Code for the proposition that such training is required of all classified fire fighters. However, the section contains an exception to these training requirements for those persons appointed to the fire department "on a temporary or probationary basis." TEX. GOV'T CODE ANN. § 419.032(a) (Vernon 1998). Chapter 143 expressly requires all cadets or academy trainees to serve a proba-

tionary period for one year beginning on their date of employment. TEX. LOC. GOV'T CODE ANN. § 143.027(a) (Vernon 1999). Therefore, a cadet's lack of state-certification training for fire fighting personnel does *not* affect whether a cadet is a classified position within the fire department.

6. The terms "trainee" and "cadets" are used interchangeably.

7. Thus, the position of a fire fighter, i.e. in the narrow sense of one who actively fights fires, is not the only position within the fire department capable of classification. OP. TEX. ATT'Y GEN. No. GA–0041 (2003).

for "fire medical emergency technology." [8]

Our primary goal in interpreting a statute is to ascertain and to effectuate the Legislature's intent. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). In doing so, we begin with the statute's plain language before resorting to rules of construction. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.1999). We begin with the plain language because we assume that the Legislature attempted to say what it meant; therefore, the statute's words should be the surest guide to the Legislature's intent. *Fitzgerald*, 996 S.W.2d at 866. In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex.2001); *see* Tex. Gov't Code Ann. 311.011 (Vernon 1998) (instructing courts to construe words and phrases in context).

In interpreting section 143.003(4), we start with its plain language. *See Wilkins*, 47 S.W.3d at 493. Only if we find that section 143.003(4)'s plain language is susceptible of two or more reasonable interpretations will we hold that the statute is ambiguous. *See In re Missouri Pac. R.R. Co.*, 998 S.W.2d 212, 217 (Tex.1999). We construe section 143.003(4) to include cadets as members who perform "fire medical emergency technology" and, thus, within the statutory definition of a fire fighter. Tex. Loc. Gov't Code Ann. § 143.003(4) (Vernon Supp.2004–2005).

**B. The City's Classification Ordinance**

In addition to the requirement that a member of the fire department must be a "fire fighter" under Section 143.003, Section 143.021 provides the second requirement for a position within the fire department to become a classified position. It states that the Fire Fighters' and Police Officers' Civil Service Commission "shall provide for the classification of all fire fighters" and that the "municipality's governing body shall establish the classifications by ordinance." Tex. Loc. Gov't Code Ann. § 143.021(a) (Vernon 1999).

Houston's classification ordinance does not expressly mention "cadets" as a classified position. Therefore, HPFFA argues that the cadet positions must be civilian, *i.e.*, non-classified.[9] However, HPFFA's

---

8. An Attorney General Opinion issued in March 2003 clarifies that, even if a member of the fire department is not appointed in substantial compliance with Chapter 143, "each fire department *member* whose position requires a substantial knowledge of fire fighting and work in the fire department" falls within the statutory definition of a fire fighter and is entitled to civil service protection. Op. Tex. Att'y Gen. No. GA–0041(2003) (emphasis in original); *see also Lee v. City of Houston*, 807 S.W.2d 290, 294 (Tex.1991) (determining that jobs that require knowledge of police work and work in the police department must be classified); *Int'l Ass'n of Firefighters Local 624 v. City of San Antonio*, 822 S.W.2d 122, 129 (Tex.App.-San Antonio 1991, writ denied) (applying *Lee's* "logic, reasoning, and holding" to position in fire department).

9. The classification ordinance does mention a position entitled "firefighter, probationary," but this position does not refer to cadets. Section 143.027 makes clear that all fire fighters, police officers, and academy trainees (i.e.cadets) that are appointed to a beginning position "must serve a probationary period of one year beginning on that person's date of employment...." Tex Loc. Gov't Code Ann. § 143.027(a) (Vernon 1999). Therefore, a "firefighter, probationary" as listed in HFD's classification ordinance refers to employees of HFD who have completed their firefighting training, thus state-certified fire fighting personnel, and are still in their first year of employment since their appointment. *See* Tex Loc. Gov't Code Ann. § 143.027(a) (Vernon 1999). Moreover, in his deposition testimony, Fire Chief Connealy indicated that a "trainee"

argument does not comport with the language of Chapter 143. Chapter 143 clarifies that the failure of the municipality's governing body to establish a position as classified "does not result in the loss of civil service benefits by a person entitled to civil service protection or appointed to the position in substantial compliance with this chapter." TEX. LOC. GOV'T CODE ANN. § 143.021(b) (Vernon 1999). Section 143.031(b) clarifies that the Houston classification ordinance's exclusion of cadets as an enumerated classified position does not necessarily indicate the cadets' status as civilians. Although it is unclear from the language of the statute whether a position excluded from a city's classification ordinance can still be classified, Texas courts have found that they can be. *See Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex. 1991).

C. **Alternative to the Classification Ordinance**

 When a municipality creates an unclassified position, *i.e.* a position that should be classified under Chapter 143, Texas courts will deem it to have been properly created and treat the position as classified. *See Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex.1991) (holding that placing unclassified employees in certain positions that must be classified contravened Chapter 143) ("*Lee I*"); *see also Lee v. Downey*, 842 S.W.2d 646, 649 (Tex. 1992) (subsequent mandamus action where court ordered that plaintiffs, who were at the top of the eligibility list when unclassified civilian employees took jobs, receive those positions even though city council did not specifically create positions as classified positions) ("*Lee II*"). In *Lee I*, the supreme court established a test to determine whether a position must be classified under Chapter 143. The *Lee I* test, as

applied to police department employees, states:

> If a particular position requires substantial knowledge of "police work and work in the police department," then it must be classified. Conversely, if a position requires no knowledge of such work, then the position need not be classified. Where the duties and functions entailed by a particular job are undisputed, the determination of whether that job requires knowledge of police work and work in the police department is a question of law for the court.

*Lee v. City of Houston*, 807 S.W.2d at 294 (citing to TEX. LOC. GOV'T CODE ANN. § 143.025(b)). In *Lee II*, the Texas Supreme Court granted mandamus requiring the trial court to reverse its failure to apply the test it set out in *Lee I* to determine whether the positions at issue must be classified. 842 S.W.2d at 648. Although the positions at issue in *Lee I* and *Lee II* were within the police department, Chapter 143 applies to both fire and police departments, and thus, these cases provide analogous rules for applying Chapter 143 to positions in the fire department. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.001–.003 (Vernon Supp.2004–2005). The court also added that where the duties and functions entailed by a particular position are undisputed, the determination of whether that position requires knowledge of police (or fire) work and work in the police (or fire department) is a question of law for the court. *Id.* Applying the test set out by the Texas Supreme Court to our facts, we hold that cadets should be deemed "classified" if the record reveals that the position of cadet requires a person's knowledge of fire fighting and work in the fire department. *See* TEX. LOC. GOV'T CODE ANN. § 143.025(b) (Vernon 1999). We, therefore, turn to

and a "probationary firefighter" are two separate positions within the classification system.

whether the position requires such knowledge.

According to Chapter 143, before a cadet can attend the fire academy, every cadet must have taken and passed a civil service entrance examination that, by statute, must be based on "the person's knowledge of and qualifications for fire fighting and work in the fire department." TEX. LOC. GOV'T CODE ANN. § 143.025(b) (Vernon 1999). This prerequisite for becoming a cadet suggests that every cadet is required to know about fire fighting and working the fire department. Once the cadet has passed the examination, the cadet attends emergency medical technician training in order to provide emergency medical services on a HFD ambulance. After obtaining state-certification as an EMT, each cadet assigned to a HFD ambulance takes the place previously filled by a state-certified, classified fire fighter EMT, who is instead assigned to a fire truck to fight fires.

According to Fire Chief Connealy, under the EMT program, while riding on HFD ambulances, HFD cadets have been performing the same job and functions as state-certified, classified fire fighter EMTs. In his deposition testimony, Fire Chief Connealy testified that although cadets do not "do any firefighting at all," they do respond to fires in order to "to provide EMS services to any firefighters or civilians that may get injured at the fire." To perform their in-the-field work on HFD ambulances, cadets, even though they are not state-certified firefighters and do not fight fires while in the back of an ambulance, must know about fire fighting in order to render the emergency services necessary to save those affected by the fires. Furthermore, cadets must know about the role of the ambulance on which they serve within the overall workings of the fire department.[10] Referring to the role of the EMS ambulances in the fire department, Fire Chief Connealy stated that "80% of our business is EMS." Therefore, we find that the cadet position requires "knowledge of fire fighting and work in the fire department." Thus, although the city classification ordinance fails to expressly include the cadet position as a classified position and because cadets are fire fighters within the civil service hierarchy of Chapter 143, cadets must be deemed classified by this Court. See Lee v. City of Houston, 807 S.W.2d at 295 ("All positions in the civil service hierarchy—that is, all classified positions, and all positions entailing the supervision of classified employees—must be classified, and all appointments to those positions must be made in accordance with the Act.") (citation omitted); TEX. LOC. GOV'T CODE ANN. § 143.021 (Vernon 1999).[11]

Because the EMT program merely assigns cadets, who are properly characterized as "classified fire fighters," to perform functions alongside other classified fire fighters, and we find that cadets are not civilians, we cannot say that civilians are displacing classified fire fighters. There-

---

10. Dr. David E. Persse, the physician director of EMS for HFD, as the one "responsible for making sure that the curriculum they are taught both in their initial training and their continuing education is adequate and appropriate," recognized in his deposition testimony the diversity of what is involved in fire fighting ranging from the typical "house on fire" to a "hazardous materials incident" or "a car wreck with leaking fuel."

11. We do not reach HPFFA's contention that the City's actions amounted to abolition of existing classified positions. Cf. City of San Antonio v. Wallace, 161 Tex. 41, 338 S.W.2d 153 (1960) (held classified positions were abolished by city and replaced with "civilianized" positions in contravention of the precursor to Chapter 143).

fore, the EMT program does not contravene Chapter 143.

**City of Houston Code of Ordinances § 4–9**

HPFFA also claims that the trial court erred in granting summary judgment for the City because it properly pleaded and offered evidence to show the existence of a material fact in that Section 4–9 of the Houston city ordinance is violated by the EMT program. This contention is without merit. Section 4–9(a) states as follows:

It shall be unlawful for any person or persons *other than* members of such fire department in its classified civil service, while driving emergency ambulances operated by the fire department, to furnish or attempt to furnish ambulance service or to operate or drive or cause to be operated or drive any ambulance on the streets of the city for the purpose of furnishing emergency ambulance service.

HOUSTON, TEX., ORDINANCES § 4–9(a) (1968) (emphasis added). By its express terms, the ordinance does not apply to any HFD fire fighters in a classified position. Because the City presented evidence that demonstrates that cadets must be deemed classified fire fighters of the fire department, Section 4–9 does not apply to cadets. Therefore, the EMT program does not violate the city ordinance.

Indulging every reasonable inference in HPFFA's favor, the evidence demonstrates no genuine issue as to the fact that fire department cadets are classified fire fighters and thereby not violating Chapter 143 or Section 9 of the city ordinance.

## CONCLUSION

Because the trial court did not err in granting summary judgment, we affirm the trial court's judgment.

Justice KEYES, concurring.

EVELYN V. KEYES, Justice, concurring.

At issue in this case is the legal status of cadets or fire fighter trainees under the Fire Fighters' and Police Officers' Civil Service Act, Chapter 143 of the Texas Local Government Code. In two points of error, the Houston Professional Fire Fighters Association (HPFFA) argues that the trial court erred in granting the City of Houston (the City) summary judgment on HPFFA's claims. HPFFA contends that although Houston Fire Department (HFD) cadets are non-classified civilian employees, under a City program that became effective November 17, 2001, they are performing emergency ambulance services reserved for classified employees; they are thus displacing classified fire fighters in contravention of Chapter 143 and section 4–9 of the Houston Code of Ordinances, entitling the displaced fire fighters to reinstatement of these functions, back pay, and other damages. I agree with the majority that the trial court properly granted summary judgment in favor of the City.

As I see it, the questions for this Court are (1) whether cadets are civilian employees of HFD, or whether, although they are not separately listed as classified employees in the City's classification ordinance (as the City points out), they are nevertheless classified members of the fire department, and, if the latter, (2) whether, by implementing a program under which cadets furnish emergency ambulance services, the City is violating section 4–9 of the Houston Code of Ordinances, which reads:

Sec. 4–9. Persons authorized to engage in emergency ambulance service.

(a) The operation of emergency ambulances on the streets of the city for the furnishing of emergency ambulance service is hereby declared to be a gov-

ernmental function of the city to be performed by the fire department in accordance with the terms of this chapter. *It shall be unlawful for any person or persons, other than members of such fire department in its classified civil service, while driving emergency ambulances operated by the Fire department, to furnish or to attempt to furnish emergency ambulance service* or to operate or drive or cause to be operated or driven any ambulance on the streets of the city for the purpose of furnishing emergency ambulance service.

HOUSTON, TEX., ORDINANCES § 4–9(a) (emphasis added.)

Chapter 143, the Fire Fighters' and Police Officers' Civil Service Act, defines a fire fighter as "a member of a fire department who was appointed in substantial compliance with this chapter" or who is entitled to civil service status under sections of the Act not applicable here. TEX. LOCAL GOV'T CODE § 143.003 (Vernon Supp. 2004–2005). "The term includes employees who perform.... (G) fire medical emergency technology...." *Id.* Since a fire fighter is, by definition, a person who was appointed in substantial compliance with Chapter 143 and who, *inter alia*, performs "fire medical emergency technology," the question becomes whether HFD cadets who perform emergency ambulance services are members of the HFD who were appointed in substantial compliance with Chapter 143; if so, they are, by definition, classified members of the fire department under the Fire Fighters' and Police Officers' Civil Service Act, and not mere civilian employees of the fire department.

Section 143.021 of the Act provides that (a) the civil service commission "shall provide for the classification of all fire fighters"; that (b), with certain exceptions

inapplicable in this case, "each fire fighter ... is classified as prescribed by this subchapter and has civil service protection"; and that (c) each position or classification may be filled "only from an eligibility list that results from an examination held in accordance with this chapter." *Id.* § 143.021. Section 143.023 sets out the requirements for eligibility for a beginning position in the fire department; section 143.025 provides for entrance examinations; and section 143.026 prescribes the procedure for filling beginning positions in a fire department by appointment from among those persons having the highest grade on the eligibility list. *Id.*, §§ 143.024, 143.025, 143.026.

Since HFD cadets must, by law, be appointed in compliance with the requirements of Chapter 143 for beginning positions in a fire department, and since, under the plain language of section 143.021, each is consequently "classified as prescribed by this subchapter and has civil service protection," HFD cadets necessarily satisfy Houston City Ordinance section 4–9's requirement that persons "driving emergency ambulances operated by the Fire department" be "members of such fire department in its classified civil service"—unless there is evidence in the record that HFD cadets are *not*, in fact, appointed as prescribed by Chapter 143, which there is not.

As the City has pointed out in its briefing, HPFFA's argument that cadets are not classified fire fighters, but civilian employees, is based on nothing more than the City's failure to list "cadets" in its Fire Department classification ordinance and the former practice of the HFD of not administering the civil service examination to cadets until *after* they had been hired and completed their training—a practice found to violate Chapter 143 in *Nugent v. City of Houston*, 159 F.Supp.2d

529 (S.D.Tex.2001), and subsequently changed.[1] There is no allegation and no evidence in this case that the HFD cadets alleged to have performed the emergency medical services contemplated by section 4–9 were, in fact, hired by HFD without compliance with the terms of Chapter 143 and are, therefore, civilians and not classified employees protected by the Civil Service Act. *Cf. Lee v. City of Houston,* 807 S.W.2d 290 (Tex.1991)(appointment of unclassified civilians who did not meet requirements of Chapter 143 into police department positions that had same supervisory responsibilities as deputy chiefs of police and lieutenants contravened Fire Fighters' and Police Officers' Civil Service Act). Nor does HPFFA even make such a complaint. Rather, HPFFA's complaint is that only *fully trained* fire fighters may perform emergency medical services and that the performance of such functions by trainees contravenes Chapter 143 and section 4–9. However, neither Chapter 143 of the Local Government Code nor section 4–9 of the City's Code of Ordinances requires that only classified fire fighters *who have completed their training as fire fighters* may perform emergency medical services. Thus, there is no statutory bar to the HFD's program of using cadets to perform emergency ambulance services. HPFFA's suit is without merit.

Because I agree with the majority that the trial court did not err in granting summary judgment for the City, I concur in the judgment of the panel.

1. The City's prior practice of treating fire department cadets as civilian employees until they had completed their training was based on its interpretation of the term "beginning positions" in section 143.025 of the Local Government Code, which requires that the civil service commission "shall provide for open, competitive, and free entrance examinations to provide eligibility lists for **beginning positions** in the fire and police departments." Tex. Gov't Code § 143.025 (emphasis added).; hence *Nugent's* holding, "Chapter 143 of the Local Government Code contemplates that trainees at the police and fire academies are beginning positions in their departments." 159 F.Supp.2d at 534. As the City points out, "The *Nugent* Court's legal conclusion that the cadet position is a beginning position under § 143.025 simply meant that the cadet position was not and legally could not be a civilian position, even though the City had treated it as such for years." The record of this case establishes that the City settled the *Nugent* litigation by entering into a Consent Decree which required, *inter alia,* that all successful fire department applicants take and pass the Civil Service entrance examination *prior to employment pursuant to* Chapter 143. This requirement has been in effect since January 1, 2002. Thus the evidence affirmatively refutes the City's contention that HFD cadets are civilians rather than classified employees of the fire department appointed in compliance with Chapter 143 and entitled to civil service protection.