IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0541
════════════
 
First American Title 
Insurance Company and Old Republic National Title Insurance Company, 
Petitioners
 
v.
 
Susan Combs, Comptroller of 
Public Accounts of the State of Texas, and 
Gregg Abbott, Attorney General of Texas, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 11, 
2007
 
 
            
 Justice Hecht, joined by Justice Wainwright, Justice Brister, and 
Justice Medina, dissenting.
 
            
 Texas, like most other states,[1] taxes gross premiums for insurance of 
risks and property in the state,[2] and like every other state but Hawaii,[3] Texas 
imposes an additional retaliatory tax on out-of-state insurers doing business in 
Texas whose home states tax more heavily than 
Texas does, 
all other things being equal.[4] Such retaliatory taxes have been “a 
common feature of insurance taxation for over a century”,[5] and though they obviously impinge on 
interstate commerce, they do not implicate the “implied limitation on the power 
of the States to interfere with or impose burdens on interstate commerce” 
contained in the Commerce Clause of the United States Constitution because 
“Congress removed all Commerce Clause limitations on the authority of the States 
to regulate and tax the business of insurance when it passed the 
McCarran-Ferguson Act.”[6] But the Fourteenth Amendment Equal 
Protection guaranty does not permit states to impose “more onerous taxes or 
other burdens on foreign corporations than those imposed on domestic 
corporations, unless the discrimination between foreign and domestic 
corporations bears a rational relation to a legitimate state purpose.”[7] “[T]he principal purpose of retaliatory 
tax laws is to promote the interstate business of domestic insurers by deterring 
other States from enacting discriminatory or excessive taxes.”[8] The United States Supreme Court has held 
that this purpose is legitimate and that a retaliatory tax rationally related to 
it does not violate Equal Protection.[9]
            
 Texas’ retaliatory tax, 
first enacted in 1935[10] and consistently applied until this 
case, falls squarely within the Supreme Court’s holding. But in this case, the 
Comptroller has reinterpreted the statute as it applies to title insurers, 
multiplying the tax due and transforming it into a penalty on nonresident 
insurers doing business in Texas. This sudden departure from the settled 
application of the retaliatory tax was not prompted by any legislative revision 
of the statute or any change in retaliatory taxation in other states. The only 
apparent purpose for the Comptroller’s new position is to generate revenue from 
nonresident title insurers simply because they are nonresident. In my view, the 
Comptroller has misconstrued the tax statute so that it now violates Equal 
Protection. Because the Court disagrees, I respectfully dissent.
            
 When insurance is sold 
through an agent, the insurer and the agent share the premium revenue. For title 
insurance in Texas, the revenue division is set by the 
Commissioner of Insurance.[11] During the times material to this case, 
that division has been 15% to the insurer and 85% to the agent.[12] For decades, the retaliatory tax in 
Texas and 
other states has been determined by comparing the taxes on total premiums, not 
just the insurer’s share. A few years ago, it is not clear exactly when, the 
Comptroller decided for the first time to compare other states’ taxes on total 
premiums with Texas’ tax on only the insurer’s 15% share. 
Simply put, the Comptroller now takes the position that “total” means 100% in 
every other state and 15% in Texas.
            
 Ordinarily, everything is 
bigger in Texas, and though “total” is now smaller here, 
taxes have increased. The Comptroller’s “new math”, as the Court refers to it, 
multiplies the retaliatory tax and discriminates against out-of-state insurers 
doing business in Texas. For example, suppose an insurer from a 
state with a 2% premium tax rate does business in Texas, where the rate is 
1.35%. On a $1,000 premium, the total tax would be $20 in the other state and 
$13.50 in Texas. Requiring the out-of-state insurer to 
pay a $6.50 retaliatory tax on its Texas business equalizes the tax burden on the 
two insurers’ business in each other’s state. Each insurer and its respective 
agents would, together, pay $20 in taxes and collect $980 in revenue. But in the 
Comptroller’s view, the retaliatory tax is determined by the difference between 
the other state’s $20 premium tax and the insurer’s 15% share of Texas’ $13.50 premium tax 
– $2.03 – a difference of $17.97. Hence, the out-of-state insurer together with 
its respective agents pays $31.47 in taxes and collects $969.73 in revenue. The 
Comptroller’s new math increases the out-of-state title insurer’s tax burden 
merely because the insurer is out-of-state.
            
 By artificially reducing the 
size of Texas’ premium tax, the Comptroller’s 
new position dictates that Texas impose 
retaliatory taxes even when insurers hail from states imposing lower premium 
taxes than Texas. Suppose an insurer from a state with a 
1% premium tax does business in Texas. On a $1,000 premium, the Comptroller 
would compare the $2.03 insurer’s share of the Texas tax to the $10 premium tax in the other 
state and assess a $7.97 surcharge. In essence, for purposes of applying the 
retaliatory tax, the Comptroller has reduced Texas’ gross premiums tax rate by 85%, from 
1.35% to 0.2025%. Virtually every other state taxes gross premiums, but none has 
so low a rate. The tax now applies to all out-of-state insurers doing business 
in Texas 
merely because they are not domestic companies. The retaliatory tax, thus 
construed, no longer operates to discourage excessive taxation in other states; 
it now operates to discourage foreign insurers from doing business in Texas.
            
 The Comptroller’s change in 
position transforms the retaliatory tax, long a means of equalizing tax burdens 
on domestic and foreign insurers doing business in Texas, into a penalty 
against out-of-state insurers. The Comptroller’s new position is not based on 
any change in the law. The relevant statutory provisions have been materially 
the same for decades. The retaliatory tax statute imposes “a tax . . . on a 
foreign insurer if . . . the foreign insurer’s state of organization . . . 
imposes a tax . . . on a similar domestic insurer that is . . . more than the 
[tax] this state directly imposes on the foreign insurer.”[13] The retaliatory tax must be “impose[d] 
and collect[ed] . . . in the same manner and for the same purpose” as the tax on 
the insurer in the other state.[14] These provisions, recodified in 2003,[15] were enacted in 1957[16] and derived from the first retaliatory 
tax statute enacted in 1935.[17] The premium tax statute imposes a “tax . 
. . on all premiums from the business of title insurance”,[18] “regardless of whether paid to a title 
insurance company or retained by a title insurance agent”,[19] to be paid by the insurer.[20] These provisions, also recodified in 
2003,[21] and amended in 2007,[22] were enacted in 1987[23] and derived from prior premium tax 
statutes, the first one dating to 1893.[24]
            
 The Comptroller argues that 
the premium tax on the agent’s 85% share of premiums is not “directly impose[d]” 
on the insurer within the meaning of the retaliatory tax statute, even though 
the insurer must remit the tax. In furtherance of its view, the Comptroller in 
2001 adopted a rule limiting an insurer’s liability for the premium tax to the 
amount due on its share.[25] The Comptroller acknowledges that no one 
took this position in the forty years after the phrase “directly imposes” was 
adopted in the 1957 statute, or in the ten years after the premium tax 
imposition and collection provisions were detailed in 1987. The Comptroller’s 
position not only discards a settled, decades-old application of statutory 
provisions frequently revisited and left substantively unchanged by the 
Legislature, it contradicts the purpose of a tax in place since at least 1935. 
This tax was based on the burden imposed by other states on the insurance 
industry and not on an artificial allocation of the tax burden between insurers 
and their agents.
            
 The Court concludes that the 
Comptroller’s reinterpretation of the statute is due deference under Tarrant 
Appraisal District v. Moore.[26] While an agency’s initial interpretation 
of a statute “is not carved in stone”,[27] an agency’s decision to depart from a 
longstanding interpretation is entitled to “considerably less deference” unless 
the agency provides some reasonable explanation for the change.[28] This is particularly so where the 
agency’s earlier interpretation is accompanied by legislative acquiescence.[29]
            
 But even if the 
Comptroller’s interpretation of “directly imposed” were entitled to more serious 
consideration, the plain language of the rest of the statute makes clear that 
the new interpretation is unreasonable.[30] The statute clearly requires the 
Comptroller to make apples-to-apples comparisons. Section 281.004 instructs the 
Comptroller to impose and collect the retaliatory tax “in the same manner and 
for the same purpose” as the foreign insurer’s state tax. The Court insists that 
the retaliatory tax focuses on the insurance company to the exclusion of agents, 
but it is myopic to view a tax on gross revenue as affecting only some of the 
participants in the business who must share that revenue. One cannot assume that 
insurers and agents in other states do not share premium revenues merely because 
Texas has a 
statute specifying how they must do so. Indeed, one must assume that insurers 
and agents expect to be paid and to share in premium revenue. If only the 
insurer’s share of the Texas premium tax is to be considered, then 
that share must be compared to the insurer’s share of the premium tax in the 
other state. But by comparing only the insurer’s share of the Texas premium tax to 
another state’s undivided premium tax, the Comptroller imposes and collects the 
retaliatory tax in a different manner and for a different purpose than the other 
state in imposing and collecting its tax.
            
 There is another equally 
important reason to reject the Comptroller’s new interpretation: it makes no 
sense. In Western & Southern, the Supreme Court acknowledged that a 
state has a legitimate interest in promoting interstate commerce by “deterring 
other States from enacting discriminatory or excessive taxes.”[31] But there is no rational basis for 
comparing 100% of another state’s premium taxes with 15% of Texas’ premium taxes to 
determine whether the other state’s taxes are excessive. Texas’ legitimate interests in deterring excessive 
taxation by other states are not served by retaliating whenever another state’s 
industry-wide tax would exceed Texas’ tax on some of the participants, or 
whenever another state employs a different accounting method for calculating and 
assessing premium taxes. Nor is it served by retaliating against states whose 
total premium taxes are lower than Texas’. Under the Comptroller’s new 
construction, the retaliatory tax provisions have been transformed into a means 
for blatant and unapologetic discrimination against out-of-state insurers and 
parochial protectionism.
            
 The Court asserts that “the 
Comptroller’s interpretation is consistent with the statutory scheme developed 
by the Legislature”,[32] but the fact is that the Comptroller and 
others who administered the retaliatory tax for decades thought a contrary 
interpretation was required by the statute. The Court adds that “[t]he 
Comptroller did not develop this scheme independently as a revenue-raising 
plan”,[33] but no other basis for the “scheme” has 
been advanced, and none is apparent. The Comptroller’s sudden multiplication of 
the retaliatory tax cannot serve the legitimate state purpose of discouraging 
excessive taxation in other states because even when a state’s tax rate is a 
fraction of the rate in Texas, insurers from that state must, in the 
Comptroller’s view, pay a retaliatory tax.
            
 I agree with the Court that 
whether other states may react in a way that is ultimately unfavorable to 
Texas 
insurers, or whether the Comptroller’s position may have other “unforeseen or 
unintended results”, is none of our business. But it is certainly our business 
to ensure that persons similarly situated are afforded the equal protection of 
the law guaranteed by the Fourteenth Amendment. The Court concludes that the 
retaliatory tax remains “an equalizer between similarly situated title 
insurers.”[34] The Comptroller’s treatment of Texas 
title insurers doing business in other states and out-of-state title insurers 
doing business in Texas is as equal as 15 is to 100.
            
 I would hold that the 
Comptroller’s position is not permitted by the text of the retaliatory tax 
statute or by the Fourteenth Amendment. Accordingly, I respectfully dissent.
 
            
            
            
            
            
            
            
            
            
         
_____________________
Nathan L. Hecht
Justice
 
 
Opinion delivered: May 16, 2008






[1] 
CCH State Tax Guide, All States ¶ 
88, at 9705 (2006) (stating that gross premiums taxes are “the most common form 
of insurance company tax” and are “imposed in every state upon some kind of 
insurance company”).

[2] 
Tex. Ins. Code §§ 
221.001-228.007.

[3] 
Prudential Ins. Co. of Am. v. Comm’r of Rev., 709 N.E.2d 1096, 1098, 1099 
n.7 (Mass. 
1999).

[4] 
Tex. Ins. Code §§ 281.001-.052, 
formerly Tex. Ins. Code 
art. 21.46. The retaliatory provision compares not just premium taxes but “the 
sum of the taxes or other charges, prohibitions, and restrictions imposed” on an 
insurer. Id. §§ 281.004(a)(2) (“The comptroller shall impose and collect 
a tax or other charge or a prohibition or restriction on a foreign insurer 
authorized to engage in business in this state if . . . the sum of the taxes or 
other charges, prohibitions, and restrictions imposed by that other state is 
more than the sum of the taxes or other charges, prohibitions, and restrictions 
that this state directly imposes on the foreign insurer.”), 281.052 (providing 
for “a penalty or other obligation”, under certain circumstances, to match the 
penalty or obligation imposed on a domestic insurer by the foreign insurer’s 
state of organization). This case involves only taxes.

[5] 
Western & S. Life Ins. Co. v. State Bd. of Equalization, 451 
U.S. 648, 668 (1981).

[6] 
Id. at 
652-653; id. at 654 (“The Court has squarely rejected the argument that 
discriminatory state insurance taxes may be challenged under the Commerce Clause 
despite the McCarran-Ferguson Act.” (citing 
Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 414 
(1946), and Prudential Ins. Co. v. Hobbs, 328 U.S. 822 (1946) (per 
curiam)).

[7] 
Id. at 
668 (internal punctuation omitted).

[8] 
Id.

[9] 
Id. at 
671-672.

[10] Act of May 2, 1935, 44th Leg., R.S., ch. 
307, § 1, 1935 Tex. Gen. Laws 713, 713-714 (“Whenever, by any law in force 
without this State, an insurance corporation . . . of this State or agent 
thereof is required to make any deposit of securities . . . or to make payment 
for taxes, fines, penalties, certificates of authority, valuation of policies, 
license fees, or otherwise, or any special burden is imposed, greater than is 
required by the laws of this State for similar foreign corporations or their 
agents, the insurance companies . . . of such States or governments shall be and 
they are hereby required as a condition precedent to their transacting business 
in this State, to make a like deposit for like purposes . . . and to pay . . . 
for taxes, fines, penalties, certificates of authority, valuation of policies, 
license fees and otherwise a rate equal to such charges and payments imposed by 
the laws of such other State upon similar corporations of this State and the 
agents thereof.”) (amending former Tex. 
Rev. Civ. Stat. art. 4758 (1925)), repealed by Act of May 28, 
1945, 49th Leg., R. S., ch. 279, § 4, 1945 Tex. Gen. Laws 442, 445, and 
by Act of May 23, 1951, 52d Leg., R.S., ch. 491, § 4, 1951 Tex. Gen. Laws 
868, 1093. The first retaliatory provision appears to have been enacted in 1909, 
but it referred only to different security deposit requirements in different 
states, not different taxes. Act approved Mar. 22, 1909, 31st Leg., R.S., ch. 
108, § 29, 1909 Tex. Gen. Laws 192, 203, formerly Tex. Rev. Civ. Stat. art. 4768 (1911), 
then Tex. Rev. Civ. Stat. 
art. 4758 (1925).

[11] Tex. Ins. Code § 2502.054(b)(1)(B) 
(“This subchapter does not . . . prohibit a title insurance company from . . . 
arranging for a division of premiums with the agent as set by the commissioner . 
. . .”), formerly Tex. Ins. 
Code art. 9.30, § B(1) (“This Article may not be construed as prohibiting 
. . . a foreign or domestic title insurance company doing business in this state 
. . . from . . . making the arrangement for division of premiums with the agent 
as shall be set by the commissioner . . . .”).

[12] See Basic Manual of Rules, Rates and 
Forms for the Writing of Title Insurance in the State of Texas § IV, P-23(f) 
(“During 2000, and thereafter until changed by the Commissioner, on all title 
insurance written by title insurance agents, the division of premiums between 
title insurance companies and title insurance agents shall be as follows: (1) 
title insurance companies shall receive 15% of each title insurance premium, and 
(2) title insurance agents shall receive 85% of each title insurance premium . . 
. .”), adopted 28 Tex. Admin. 
Code § 9.1, available at 
http://www.tdi.state.tx.us/title/titlem4d.html#P-23.

[13] Tex. Ins. Code § 281.004(a) (“The 
comptroller shall impose and collect a tax or other charge or a prohibition or 
restriction on a foreign insurer authorized to engage in business in this state 
if: (1) the foreign insurer's state of organization by law imposes a tax or 
other charge or a prohibition or restriction on a similar domestic insurer that 
is or may be authorized to engage in business in that other state; and (2) the 
sum of the taxes or other charges, prohibitions, and restrictions imposed by 
that other state is more than the sum of the taxes or other charges, 
prohibitions, and restrictions that this state directly imposes on the foreign 
insurer.”).

[14] Id. § 281.004(b) (“The comptroller 
shall impose and collect the tax or other charge, prohibition, or restriction 
under Subsection (a) in the same manner and for the same purpose as the foreign 
insurer’s state of organization.”).

[15] Act of May 22, 2003, 78th Leg., R.S., ch. 
1274, § 1, 2003 Tex. Gen. Laws 3611, 3638-3641, 4138.

[16] Act of May 22, 1957, 55th Leg., R.S., ch. 
396, § 1, 1957 Tex. Gen. Laws 1184, 1185 (“Whenever by the laws of any other 
state or territory of the United States any taxes, licenses, fees, fines, 
penalties, deposit requirements or other obligations, prohibitions or 
restrictions are imposed upon any insurance company organized in this State and 
licensed and actually doing business in such other state or territory which, in 
the aggregate are in excess of the aggregate of taxes, licenses, fees, fines, 
penalties, deposit requirements or other obligations, prohibitions or 
restrictions directly imposed upon a similar insurance company of such other 
state or territory doing business in this State, the Board of Insurance 
Commissioners of this State shall impose upon any similar company of such state 
or territory in the same manner and for the same purpose, the same taxes, 
licenses, fees, fines, penalties, deposit requirements or other obligations, 
prohibitions or restrictions . . . .”), formerly Tex. Ins. Code art. 21.46.

[17] Supra note 10. 

[18] Tex. Ins. Code § 223.003(a) (“An annual 
tax is imposed on all premiums from the business of title insurance. The rate of 
the tax is 1.35 percent of title insurance taxable premiums for a calendar year, 
including any premiums retained by a title insurance agent”.).

[19] Id. § 223.005 (a) (“Premiums 
received from the business of title insurance are subject to the tax under this 
chapter regardless of whether paid to a title insurance company or retained by a 
title insurance agent, with the tax being in lieu of the tax on the premiums 
retained by a title insurance agent.”).

[20] Id. § 223.005(b) (“The state 
facilitates the collection of the premium tax on the premiums retained by a 
title insurance agent by establishing the division of the premiums between the 
title insurance company and title insurance agent so that the company receives 
the premium tax due on the agent's portion of the premiums and remits it to the 
state.”).

[21] Act of May 22, 2003, 78th Leg., ch. 1274, 
§§ 1, 26(b)(4), 2003 Tex. Gen. Laws 3611, 3622-3624, 4139.

[22] Act of May 27, 2007, 80th Leg., R.S., ch. 
932, § 3, 2007 Tex. Gen. Laws 3194, 3195 (amending Section 223.003(a), which 
previously read: “An annual tax is imposed on each title insurance company that 
receives premiums from the business of title insurance. The rate of the tax is 
1.35 percent of the title insurance company’s taxable premiums for a calendar 
year, including any premiums retained by a title insurance agent”.).

[23] Act of June 1, 1987, 70th Leg., R.S., ch. 
1073, § 22, 1987 Tex. Gen. Laws 3610, 3638-3640, formerly Tex. Ins. Code art. 9.59 §§ 1 (“Each 
title insurance company receiving premiums from the business of title insurance 
shall pay . . . an annual tax on those premiums . . . .”), 8(b) (“The premium 
tax is levied on all amounts defined to be premium . . . , whether paid to the 
title insurance company or retained by the title insurance agent . . . . The 
State of Texas facilitates the collection of the premium tax on the premium 
retained by the agent by setting the division of the premium between insurer and 
agent so that the insurer receives the premium tax due on the agent’s portion of 
the premium and remits it to the State.”).

[24] Act approved May 11, 1893, 23d Leg., R.S., 
ch. 102, § 1, 1893 Tex. Gen. Laws 156. The premium tax statutes have been 
frequently amended, and codified over the years as Tex. Rev. Civ. Stat. art. 5243e (1895) 
(taxing “gross premium receipts” of “every life, fire, marine, accident, or 
other insurance company”), Tex. Rev. 
Civ. Stat. art. 7376 (1911), and Tex. Rev. Civ. Stat. art. 7064 (1925). 
Article 7064 was amended by Act of May 29, 1981, 67th Leg., R.S., ch. 844, § 1, 
1981 Tex. Gen. Laws 3212, 3212-3215 and later recodified as articles 4.10 
(applicable to title insurance companies) and 4.11 of the Insurance Code. Act of 
May 31, 1981, 67th Leg., R.S., ch. 389, § 36, 1981 Tex. Gen. Laws 1490, 
1780-1784. Article 4.10 was, in turn, amended by Act of May 30,1983, 68th Leg., 
R.S., ch. 283, 1983 Tex. Gen. Laws 1367 and Act of May 24, 1985, 69th Leg., 
R.S., ch. 161, §§ 3-4, 1985 Tex. Gen. Laws 715, 716. Eventually, in 1987, 
separate provisions for title insurance were enacted and codified at art. 9.59. 
Act of June 1, 1987, 70th Leg., R.S., ch. 1073, §§ 22, 23, 1987 Tex. Gen. Laws 
3610, 3638-3641. Currently, provisions for gross premium taxes on various kinds 
of insurance are found in Chapters 221 through 226 of the Insurance Code. Act of 
May 22, 2003, 78th Leg., R.S., ch. 1274, § 1, 2003 Tex. Gen. Laws 
3611.

[25] 34 Tex. Admin. Code § 3.831(4)(c) (“Title 
insurers and title agents are both subject to the premium and maintenance tax on 
their proportional share of the premiums and are separately liable for the tax 
if the insurer fails to remit the tax due on the agent’s portion.”).

[26] 845 S.W.2d 820, 823 (Tex. 1993) 
(“[C]onstruction of a statute by an administrative agency charged with its 
enforcement is entitled to serious consideration, so long as the construction is 
reasonable and does not contradict the plain language of the 
statute.”).

[27] Rust v. Sullivan, 500 U.S. 173, 186 
(1991) (quoting Chevron USA, Inc. v. NRDC, 467 U.S. 837, 863 (1984)); 
see also FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 157 ( 
2000) (an agency has ample latitude to adapt its rulings or policies to changing 
circumstances). 

[28] Watt v. Alaska, 451 U.S. 259, 273 
(1981); see Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 698 (1991) 
(though an agency decision to reinterpret a statute is entitled to 
Chevron deference, such an interpretation is “less persuasive”); 
Rust, 500 U.S. at 187 (the agency provided “reasoned analysis” to support 
its changed interpretation); Flores v. Employees Ret. Sys., 74 S.W.3d 
532, 544-545 (Tex. App.–Austin 2002, pet. denied) (an agency must explain a 
decision to depart from a longstanding policy); City of El Paso v. El Paso 
Elec. Co., 851 S.W.2d 896, 900 (Tex. App.–Austin 1993, writ denied). 


[29] See Stanford v. Butler, 181 S.W.2d 
269, 273 (Tex. 1944) (contemporaneous construction of an act by those charged 
with its enforcement is “‘worthy of serious consideration as an aid to 
interpretation, particularly where the construction has been sanctioned by long 
acquiescence. Although a contemporaneous or practical construction is not 
absolutely controlling, it has much persuasive force and is entitled to great 
weight in determining the meaning of an ambiguous or doubtful provision.’”) 
(citations omitted). 

[30] Continental Cas. Co. v. Downs, 81 
S.W.3d 803, 807 (Tex. 2002) (“Construction of a statute by the agency charged 
with its enforcement is entitled to serious consideration only if that 
construction is reasonable and does not contradict the statute's plain 
language.”) (citations omitted). 

[31] 451 U.S. at 668. 

[32] Ante at ___.

[33] Ante at ___.

[34] Ante at 
___.