**Richard W. LEE et al., Relator,**

v.

**The Honorable Dan DOWNEY, Judge, Respondent.**

**No. D–1439.**

Supreme Court of Texas.

Oct. 7, 1992.

Rehearing of Cause Overruled Dec. 16, 1992.

Dissenting Opinion of Justice Gonzalez on Motion for Rehearing Dec. 16, 1992.

Joan Marie Lucci Bain, Richard L. Aman, Gene Jones and Edward L. Lasoff, Houston, for relator.

John E. Fisher, Clarence A. West, Houston, for respondent.

## OPINION

DOGGETT, Justice.

In this mandamus proceeding, we determine that a trial court abused its discretion in failing to comply with a previous judgment of this court.

In 1986, Richard W. Lee and other police officers employed by the Houston Police Department (HPD) challenged certain ordinances of the City of Houston in an action seeking a declaratory judgment, injunctive relief, promotions with backpay, and attorney's fees. The trial court accorded relief in a judgment which (1) declared void four City ordinances as violative of a state statute because they eliminated the civil service status of certain HPD positions;[1] (2) enjoined the City from hiring civilians to fill these positions; and (3) ordered promotions with back pay and attorney's fees to the plaintiffs. The court of appeals reversed this judgment and dissolved the injunction.[2] This court reversed and remanded to the trial court "for entry of judgment in accordance with [our] opinion." *Lee v. City of Houston*, 807 S.W.2d 290, 296 (Tex. 1991) (*Lee I*).

On remand, the police officers submitted to the trial court a reformed judgment incorporating some of the language of our opinion and granting the same relief as the original judgment. Rejecting their proposal, the trial court instead issued a "Final Judgment,"[3] which reads in full:

---

1. Fire Fighters' and Police Officers' Civil Service Act, Tex.Loc.Gov't Code §§ 143.001–143.134 (formerly Tex.Rev.Civ.Stat.Ann. art. 1269m).

2. *City of Houston v. Lee,* 762 S.W.2d 180 (Tex. App.—Houston [1st Dist.] 1988).

3. Judge Frank White entered the original judgment of the trial court; Judge Dan Downey, the second judgment.

Pursuant to the mandate of the Texas Supreme Court issued July 1, 1991, the Court hereby finds as follows:

The Defendant's use of unclassified employees in the nine positions at issue in this case violated Section 143.021(c) of the Texas Local Government Code. Such positions must be filled in accordance with the terms of such statute.

All releif [sic] not granted herein is denied.

■■■ The police officers return here as Relators, seeking a writ of mandamus compelling the trial court to render judgment in compliance with our earlier mandate. In *Lee I*, we directed the trial court to enter judgment in accordance with an opinion reversing the judgment of the court of appeals. Because its judgment does not conform to our mandate, the trial court has abused its discretion, and we conditionally grant relief. In doing so, we reject the City's claim that mandamus is not the proper remedy. If a trial court fails to issue a judgment in accordance with our mandate, the aggrieved party may seek either a writ of prohibition or a writ of mandamus. *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 366 (Tex.1985, orig. proceeding); *City of Orange v. Clark*, 627 S.W.2d 146, 147 (Tex.1982, orig. proceeding). Mandamus will issue to ensure compliance with this court's judgment. *Gulf, Colorado & Santa Fe Ry. Co. v. City of Beaumont*, 373 S.W.2d 741, 744 (Tex.1964, orig. proceeding).

Based upon its determination that "each of the Plaintiffs in this cause had attained a position on an active promotional eligibility list at the time Defendants [improperly] filled the positions which are the subject of this action with [civilians]," the trial court originally ordered that each plaintiff receive retroactive promotion as well as lost wages and benefits. Interpreting a civil

service statute that lacked a clear definition of the "police officer[s]" it encompasses, we concluded unequivocally in *Lee I* that "the placement of unclassified employees in [nine] positions [four at the level of deputy chief and five at the level of lieutenant] contravened the Act." 807 S.W.2d at 294–95.

The City undertook an extensive "reorganization" of its police department on January 20, 1986, by creating four new bureaus to be directed by four recently-hired, unclassified employees. The trial court originally determined that each of these bureau commanders "assumed the duties of a Deputy Chief." We concluded in *Lee I* that the appointment of unclassified employees to these four positions contravened the Act. 807 S.W.2d at 295. In other words, the positions should have been filled from the promotional eligibility list for the position of Deputy Chief in existence at the time of the vacancies. *See Bostick v. Owens*, 423 S.W.2d 471, 472 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).[4] Three of the plaintiffs—officers Milam, Simmons, and Contreras—occupied the second, third, and fourth positions on the Deputy Chief eligibility list that was in existence on January 20, 1986. Thus, each of those three officers was entitled to promotion to the position of Deputy Chief of Police effective March 21, 1986.

■■ Two of the unclassified employees who became bureau commanders on January 20, 1986, vacated positions entailing duties which had previously been performed by captains.[5] The plaintiffs asserted that these vacancies should have been filled by the appointment of officers from the eligibility list for the position of captain. We could not determine from the record, however, whether these positions must be classified. To resolve this question, the trial court should have made any

4. Insisting that no vacancies were created by the January 20, 1986 reorganization, the dissent references trial testimony of Lieutenants DeFoor and Lee. 842 S.W.2d at 654, n. 14. Neither conceded that no legal vacancy was created as a result of the reorganization; indeed, Lee's testimony supports a contrary conclusion.

5. Don Hollingsworth vacated his position as head of the Houston Crime Information Center (now the Computer Services Division) to become Bureau Commander of the Management Information Bureau. Jack Seitzinger vacated his position as head of the Police Training Academy to become Commander of the Management Information Bureau.

further findings necessary to apply the test set forth in *Lee I.* If, by employing that test, the trial court determines that the two positions must be classified, the two officers at the top of the captain eligibility list in existence on January 20, 1986—Officers Lee and Hendrick—should be promoted to captain effective March 21, 1986.

The promotion of four captains to deputy-chief positions on March 21, 1986, would have created four additional captain-level vacancies that should have been filled by officers at the top of the captain eligibility list then in existence. The top four officers remaining after any other promotions are entitled to promotion to the position of captain effective May 20, 1986.[6]

The plaintiffs also challenged the appointment of five unclassified persons to positions entailing the duties and responsibilities of lieutenants. We held in *Lee I* that these appointments contravened the Act. 807 S.W.2d at 295. In accord with that prior opinion, the trial court should have determined the exact dates of vacancies for these positions, as well as sergeant, and the relevant eligibility lists, awarding appropriate relief to those plaintiffs who should have been promoted to vacant positions.

■ It is well settled that when a city fails to fill a vacant position in accordance with the Civil Service Act, the officers or firefighters who properly should have obtained such jobs are entitled to retroactive promotion and back pay. *Michna v. City of Houston,* 521 S.W.2d 331, 335 (Tex.Civ.

App.—Houston [1st Dist.] 1975, no writ), *appeal after remand,* 534 S.W.2d 728 (Tex. Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.); *see International Ass'n of Firefighters v. Townsend,* 622 S.W.2d 562 (Tex.1981). A promotion is considered effective as of the last date that the city could lawfully have filled the vacancy; that is, sixty days from the date the vacancy was created. *See* Tex.Loc.Govt.Code § 143.108(b);[7] *Michna,* 521 S.W.2d at 335; *Bostick v. Owens,* 423 S.W.2d 471, 472 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).[8] Additionally, a prevailing party may recover attorney's fees. Tex.Local Gov't Code § 143.015. The trial court judgment considered by this court in *Lee I* provided back pay and attorney's fees.

We are hopeful that today's opinion will finally resolve this long delayed dispute. We are confident that Judge Downey will withdraw his July 26, 1991 judgment and, in lieu thereof, issue a judgment fully implementing the mandate of this court, as set forth here and in *Lee I* by identifying those plaintiffs entitled to promotion and awarding them backpay and attorney's fees.[9] The writ will issue only if he fails to comply.

GONZALEZ, Justice, dissenting.

In granting this mandamus, the Court rewrites its previous opinion under the guise of enforcing its judgment. *See Lee v. City of Houston,* 807 S.W.2d 290 (Tex. 1991) (*Lee I*). This revision long after the motion for rehearing was overruled, and

---

6. The top five positions on the list in existence from April 11, 1985, to April 11, 1986, were held by plaintiffs Lee, Hendrick, Yates, DeFoor, and Merrill. Although the list expired before the sixty-day deadline would have passed, it nonetheless determines eligibility for the March 21 vacancy. *See Bostick v. Owens,* 423 S.W.2d at 472.

7. This sixty-day deadline applies to all Texas municipalities through section 143.108(b) (for cities with population of 1.5 million or more) and section 143.036(e) (for other municipalities).

8. When *Michna* and *Bostick* were decided, the predecessor to section 143.108 allowed ninety days for the filling of vacancies. Act of July 5, 1949, ch. 572, § 2, 1949 Tex.Gen.Laws 1114,

1115 (amending Tex.Rev.Civ.Stat.Ann. art. 1269m, § 8). In 1979, however, the Legislature shortened the period to sixty days. Act of May 28, 1979, ch. 753, § 3, 1979 Tex.Gen.Laws 1856, 1857.

9. Although their proposed judgment on remand sought to reinstate a permanent injunction that the City cease illegal civilian appointments, the Relators have indicated in both their Petition for Mandamus and in oral argument their belief that the City will demonstrate future good faith compliance with *Lee I.* Assuming this agreed change in circumstance, the trial court did not abuse its discretion in denying permanent injunctive relief.

after the term of the Court has expired, is highly irregular. I dissent.

The first principle ignored by the Court is our lack of jurisdiction. Our term is coterminous with the calendar year. TEX. CONST. art. V, § 3a. The Court loses jurisdiction to alter its judgment at the end of the term in which it was rendered, unless a motion for rehearing has been filed, or the time to do so has not expired. *Wilson Indep. Sch. Dist. v. Weaver,* 187 S.W.2d 221, 222 (Tex.1945). "While this court has the power, in a proper case, to overrule its prior opinions, it does not have the power to set aside or modify its judgments rendered at a prior term." *Federal Royalty Co. v. State,* 98 S.W.2d 993, 996 (Tex.1936).

Although the Court grants this mandamus under the pretense that the judgment of the trial court conflicts with its mandate, in reality, it rewrites the previous opinion by filling in gaps in *Lee I,* and by directing the trial judge to make findings that were not ordered in the earlier opinion. A brief review of the authorities cited by the Court and the history of the case will clearly demonstrate that, under the circumstances of this case, mandamus is not the proper remedy.[1]

*Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985, orig. proceeding) involved a dispute over an oil and gas lease. The trial court rendered judgment for the plaintiffs and *severed* defendants' counterclaim. The court of appeals reversed, but the Supreme Court reinstated the judgment of the trial court. The Supreme Court's judgment read:

> The judgment of the Court of Appeals is therefore reversed, and the judgment of the trial court *affirmed.* It may proceed with the severed matter, the action for reformation. (emphasis added.)

Thereafter, a different trial judge granted a defendant's motion to consolidate factual issues of the original action with the severed claim and announced his intention to set the consolidated cause for trial. The

Supreme Court held that when "the opinion and mandate of this court prohibit relitigation of some issues on remand, or direct that only some expressly severed issues or causes may still be litigated, and the parties and the trial court attempt relitigation beyond that which was expressly permitted, a writ of prohibition will issue to prohibit relitigation." *Cherokee,* 698 S.W.2d at 366, *citing City of Orange v. Clark,* 627 S.W.2d 146 (Tex.1982). It also conditionally granted a writ of mandamus to prevent interference with the Court's prior mandate. No interference with the Court's prior mandate existed in the case now before the Court.

*City of Orange v. Clark,* 627 S.W.2d 146, 147 (Tex.1982, orig. proceeding) involved a dispute between the cities of Orange and West Orange over the annexation of property. West Orange sued Orange to have certain 1970 annexation ordinances of Orange declared invalid. In that suit, it was necessary to determine the 1963 population of both cities. The Supreme Court reversed the judgment of the court of appeals only as to the validity of the ordinance purporting to annex a certain strip of land and remanded the cause to the trial court. The Court wrote: "The trial upon remand should not include a retrial of the population issues which have already been once fairly tried." *Id.* at 147, *quoting City of West Orange v. State ex rel. City of Orange,* 613 S.W.2d 236, 239 (Tex.1981).

Similar language appeared in the mandate. It became apparent that West Orange intended to relitigate the 1963 population determination and that the trial court was going to allow this relitigation. The Supreme Court held that this relitigation interfered with our former judgment and conditionally granted a writ of mandamus to prevent the relitigation of these issues. *City of Orange v. Clark,* 627 S.W.2d at 146–47. No relitigation of issues which interfere with our former judgment exist in the case now before the Court.

---

1. It is also well settled that mandamus is intended to be an extraordinary remedy, available only when a trial court clearly abuses its discretion and there is no adequate remedy on appeal.

Relator must establish that the trial court could reasonably have reached only one decision but failed to do so. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).

In *Gulf, Colorado & Santa Fe Ry. Co. v. City of Beaumont,* 373 S.W.2d 741 (Tex. 1964, orig. proceeding), the underlying suit was a claim by some plaintiffs against the railroad and the City of Beaumont for damages to residential property caused by flood water. The railroad filed a cross action against the City for contribution and indemnity. The jury made liability findings against both the railroad and the City. However, the trial court rendered judgment only against the railroad and denied the railroad's request for contribution or indemnity from the City. The court of appeals affirmed, but the Supreme Court reversed the judgment of the court of appeals on the basis that the judgment should have been rendered against both defendants as joint tortfeasors. The cause was remanded to the trial court with instructions to "enter" judgment accordingly.[2]

On remand, the trial court rendered a judgment for the plaintiffs against the railroad and the City in accordance with the judgment and mandate of the Supreme Court. Thereafter, the City attempted to relitigate the issue of its liability to the railroad. The Supreme Court held that such a trial would interfere with the judgment and mandate of this Court and that it would not be permitted. *Gulf, Colorado & Santa Fe Ry. Co.,* 373 S.W.2d at 744.

In each of these three cases, the trial court reopened a matter foreclosed by this Court's mandate. On the other hand, in this case, the Court chastises the trial court for failing to reopen a matter not mentioned in the prior judgment. Furthermore, in the cases cited by the Court in *Lee II,* the trial court acted in a manner contradictory to this Court's judgment. In the present case, the trial court acted consistently with this Court's judgment and mandate but is now being faulted for failing to

prophesy what the Court would say in the following term.

As the next section will demonstrate, these cases are clearly distinguishable from the case now before us and the legal principles applied in the above cases have no application here. Indeed, it is a situation of a round peg in a square hole. A review of the circumstances of this case will clearly show that the Court is modifying the prior judgment, not merely enforcing it.

### Facts & Procedural Posture

In the late 1980's, the City of Houston began to reorganize its police department by consolidating some functions and by hiring additional civilians throughout the police department for managerial and technical roles. Its goal was to get more police officers to shuffle alleged criminals rather than to shuffle paper; that is, to free up more police officers to fight crime by patrolling the streets, making arrests, investigating crimes, etc. *See Lee v. City of Houston,* 807 S.W.2d 290, 296–97 (Tex. 1991) (Gonzalez, J., dissenting). Toward this end, the City Council passed various ordinances which had the effect of consolidating some administrative functions and placing some civilians in positions of authority over several bureaus or departments previously headed by police officers. No one lost their job as a result of this reorganization, and the number of police civil service positions within the department was the same before and after the passage of the ordinances. Nonetheless, relators, police officers of various ranks, who were at or near the top of the promotion eligibility list for various positions, challenged the legality of these ordinances and alleged that they violated the Firemens and Policemen's Civil Service Act ("Act").[3] After a non-jury trial in 1987, Judge Frank

---

2. Perhaps the Court meant to say that it was remanding the cause for "rendition" of judgment rather than for "entry" of judgment. Judges *render* judgments and clerks enter them on the minutes. *Burrell v. Cornelius,* 570 S.W.2d 382, 384 (Tex.1978); *see Joachim v. Chambers,* 815 S.W.2d 234, 235–36, 242 (Tex. 1991) (Gonzalez, J., dissenting).

3. This case was tried prior to recodification of Tex.Rev.Civ.Stat. art. 1269m, *repealed by* Act of 1987, (ch. 149, § 49(1); 1987 Tex.Gen.Laws 1306). *See now* Tex.Local Gov't Code § 143.001–.134.

White [4] held void the ordinances in question insofar as the ordinances attempted *to create* [5] certain civilian positions in contravention of the Act. Judge White enjoined the City from hiring civilians to fill certain positions and awarded back pay, promotion, and attorney's fees to the plaintiffs.

The court of appeals reversed and rendered a take-nothing judgment against the police officers. 762 S.W.2d 180, 188. It said that the Firemens and Policemen's Civil Service Act applied to

> [t]hose who do "police work," that is, who enforce the law, make arrests, and conduct criminal investigations.... Accordingly, article 1269m, § 8 does not require the classification of positions within HPD that do not involve the performance of law enforcement duties.

762 S.W.2d at 187. Since nothing in the record indicated that the newly created positions required exercise of law enforcement duties, the court of appeals held that the positions were not required to be classified. The court went on to declare that

> neither have they in fact been classified by ordinance duly enacted by the city council, the only agency authorized to make such classification. Therefore, as a matter of law, *no vacancies existed* in an article 1269m classification for any of these positions.

762 S.W.2d at 188 (emphasis added).

This Court disagreed with the court of appeals' construction of the Act. On March 6, 1991, the Court issued an opinion which noted that the legislature had failed to draw a "bright line" as to what positions in a police department are covered by the Act,[6] noted that the Act's most important definition, "policeman," is circular,[7] and vague,[8] and that the proper boundaries of the police and firemen civil service system are unclear.[9] The Court also declared that not

> every high-level position in a police department must be held by a classified employee. If a particular job assignment requires no knowledge of police work and work in the police department, and entails no supervision of classified officers, the position need not be classified. Thus, the Act does not necessarily prohibit the vertical declassification of certain subdivisions within the department. Nor does the Act prohibit the holder of a police license from assuming a job assignment outside of the civil service system, when the assignment requires no knowledge of police work and work in the police department, as defined above.

807 S.W.2d at 295.

The Court concluded that the challenged ordinances contravened the Act. It reversed the judgment of the court of appeals, and "remand[ed] the cause to the trial court for entry of judgment in accordance with this opinion." [10] 807 S.W.2d at 296 (emphasis added). In *Lee I*, I expressed my concern with the procedural disposition of the case. 807 S.W.2d at 301–02.

On remand, the relators did not request that Judge Downey conduct an evidentiary hearing so that he could make the "findings necessary to apply the test set forth in

---

**4.** Sometime after the trial, Judge White died and was succeeded by Judge Downey.

**5.** The Court today mischaracterizes the basis of the trial court's ruling. It states that:

> The trial court accorded relief in a judgment which (1) declared void four City ordinances as violative of a state statute because they *eliminated* the civil service status of certain HPD positions; ...

842 S.W.2d at 647 (emphasis added). However, throughout its judgment, Judge White speaks of the *creation* of certain civilian positions within the police department as the vice in contravention of the Act. This is also how the court of appeals described the basis for the trial court's decision. *City of Houston v. Lee*, 762 S.W.2d

180, 181 (Tex.App.—Houston [1st Dist.], 1988), *rev'd*, 807 S.W.2d 290 (Tex.1991).

**6.** 807 S.W.2d at 294.

**7.** 807 S.W.2d at 292.

**8.** "Until the legislature clearly defines the scope of the Fire Fighters' and Police Officers' Civil Service System, courts will be left to apply the vague standard we discern today to increasingly complex bureaucracies." 807 S.W.2d at 294 n. 9.

**9.** 807 S.W.2d at 291.

**10.** See n. 2.

*Lee I"* which is what the Court now says that he should have made. 842 S.W.2d at 649. Even though this Court did not reinstate the *promotions, back pay, and attorney's fees* which were originally granted by the trial court and reversed by the court of appeals, relators asserted on remand that they were entitled to this relief.[11] They presented Judge Downey with an 18–page proposed "reformed judgment" that would have reinstated the 1987 judgment.

Judge Downey refused to reinstate the prior judgment and wrote a letter to the parties explaining his decision. He said in part:

Enclosed please find the Court's judgment in the above styled and numbered cause.

A word of explanation is appropriate. The decision of the Texas Supreme Court in this case is significant both for what it says and what it does not say.

Significant for what it says in that it orders this Court to enter a judgment consistent with this opinion; to wit, "We hold that the challenged placements contravened the Act's requirement that all covered positions be filled in accordance with the statutory terms." § 143.021(C) (See page 10)

Significant for what it does not say since there is no instruction to this Court to reinstate the trial court's judgment of February 16, 1987.

*The Supreme Court knows how to instruct the trial court to reinstate or modify its judgment, if that be their intention.*

(emphasis added). He then rendered a judgment which read:

The Defendant's use of unclassified employees in the nine positions at issue in this case violated Section 143.021(c) of the Texas Local Government Code. Such positions must be filled in accordance with the terms of such statute. All relief not granted herein is denied.

The Court today fills in some holes of the Court's prior opinion and acts as if Judge Downey should have known all along that the Court meant in the prior opinion what it now says today. In fairness to Judge Downey, there was no way for him, or anyone else for that matter, to divine that he was being required by this Court to make *further* findings.

Furthermore, Judge Downey and the parties should not be left in the dark as to whether he is being directed to make a decision after reading the voluminous, stale record or whether the parties may supplement the record with additional evidence. Either way, it is going to be an almost impossible task to filter 1987 evidence through a test or standard developed in 1992.[12] In many respects this is unfair to the litigants because there is no way they could have anticipated the Court's construction of the Act, and as a result, the parties have been deprived of an opportunity to try their case under this new standard.

### *Attorney's Fees*

The Court today summarily holds that Judge Downey abused his discretion in not awarding attorney's fees to relators. The Court's rationale is that "[T]he trial court judgment considered by this court in *Lee I* provided back pay and attorney's fees." 842 S.W.2d at 649 (emphasis added). However, in *Lee I*, the Court *did not affirm the trial court's award of attorney's fees* to relators, and it is highly irregular to go back and *"affirm"* any part of a judgment in a writ of mandamus proceeding. This is yet another stark example of how the Court is rewriting *Lee I* long after the

---

11. The relief relators seek is dependent on the existence of classified vacancies. The court of appeals determined that no classified vacancies had been created. 762 S.W.2d at 188. In *Lee I,* the Court said: "We do not reach the Petitioners' contention that the Respondents' actions amounted to abolition of existing classified positions." 807 S.W.2d at 296 n. 11. Relators did not challenge this statement in their motion for rehearing.

12. The Court today states that "[I]n accord with [the] prior opinion, the trial court should have determined the exact dates of vacancies for these positions (unclassified positions entailing the duties of lieutenants) as well as sergeant, and the relevant eligibility lists." 842 S.W.2d 649. This will prove to be an insurmountable task. The record is unclear both as to exact dates of these vacancies as well as to the relevant eligibility list.

motion for rehearing was overruled and after the term of the Court has expired.

Additionally, "[u]nder the terms of Article 1269m the total responsibility for creating and abolishing civil service positions in the Fire Department rests in the City Council; and a position so created in a duly enacted ordinance by the City Council is vacant so long as it is not filled, and until abolished by action of the Council." *Duckett v. City of Houston*, 495 S.W.2d 883, 886 (Tex.1973).[13] In *Duckett*, we held that the action or inaction of the Fire Chief had no legal effect on the existence or non-existence of a vacancy in the classified service. Here, the record is clear that there were no vacancies created by the City Council for Deputy Chief or Captain on January 20, 1986.[14] However, because the Houston Police Chief reorganized the department on that date and assigned additional responsibilities to four civilian administrators, the Relators contend that thereby four Deputy Chief vacancies were created. Since only the City Council can create a vacancy, the action of the Police Chief had the same legal significance as the inaction of the Fire Chief in *Duckett*, for the Chief, acting alone, can neither create nor abolish a vacancy. All the judiciary is authorized to do is hold the city ordinance valid or invalid.

If we hold the ordinance void, we cannot and should not award promotions and back pay. To do so is to substitute our opinion for that of the City Council.

*Conclusion*

Judge Downey did not interfere with our prior judgment, and mandamus is not the proper remedy. There is nothing in *Lee I* that awards promotions and back pay and attorney's fees to relators. Additionally, the Court ignores the standards for issuance of mandamus set forth in *Walker v. Packer*. There is an adequate remedy on appeal, and it is a stretch of olympian proportions to say that Judge Downey's decision was arbitrary and capricious so as to be a clear abuse of discretion.

PHILLIPS, C.J., and HECHT and CORNYN, JJ., join this opinion.

## DISSENTING OPINION ON MOTION FOR REHEARING

GONZALEZ, Justice.

The City asserts that the mandamus relief granted by the Court is inappropriate,[1] that the Court has usurped the City Council's responsibility for creating classified positions,[2] and that the Court erred in

---

**13.** Duckett was an employee of the Houston Fire Department. By virtue of a promotional exam, he was placed on the promotion list for assistant arson investigator. Not all authorized positions were filled because the fire chief was of the opinion that not all of them were needed. Duckett filed a mandamus action to compel the city to promote him to assistant fire investigator. The trial court granted him a summary judgment and the court of appeals reversed and remanded on the grounds that there was a fact issue as to whether or not a vacancy existed. We reversed and held that the civil service statute is not subject to a construction that the Fire Chief has discretion to abate civil service positions by not filling it.

**14.** One of the relators, Lieutenant Defoor, conceded that no legal vacancy was created as a result of the January 20, 1986 reorganization. Relator Lee also admitted that no vacancy existed on that date but he asserted that "there should have been."

**1.** Mandamus is available only when a trial court clearly abuses its discretion and there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–43 (Tex.1992). For the reasons explained in my prior opinion in this case, Relators did not meet their burden of showing that Judge Downey clearly abused his discretion nor did they establish why an ordinary appeal was inadequate.

**2.** The Act in question assigns to the City Council the responsibility of establishing civil service classifications and prescribing the number of positions in each classification. TEX.LOC.GOV'T CODE § 143.021(a). The majority has usurped the law by ostensibly creating classified positions into which Relators must be promoted. Cf. *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex.1936) ("a court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act. Of course, if such governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, but there the power of the court ends.") *See* Caption of H.B. 79, Act of May 22, 1957, 55th Leg., R.S., ch. 391, 1957 Tex.Gen.Laws 1171 (amending *Tex.Rev.Civ.Stat.Ann. art.* 1269, § 12, the predecessor to TEX.LOC.GOV'T CODE § 143.-021(a).

awarding attorney's fees because this issue was not before the Court. Each of these points is meritorious and most reasonably minded people, particularly the residents of the City of Houston who have been treated unfairly by this majority and who have to foot the bill for the majority's extraordinary and unprecedented decision, should be concerned and outraged. The majority creates uncertainty by failing to follow the law regarding standards for issuance of mandamus and the law of the case doctrine. Furthermore, to add insult to injury, the majority refuses to explain why the City has to pay attorney's fees when it was, without question, acting in a governmental capacity.[3]

All of the points raised by the City with the exception of the attorney's fees issue have been adequately addressed in my prior opinion. However, the irregular and illegal manner in which the majority has treated the attorney's fees issue requires further elaboration.

The City raised the trial court's award of attorney's fees as a point of error in the court of appeals. The court of appeals noted that the City was acting in a governmental capacity and held that the City's governmental immunity from liability for attorney's fees had not been waived. 762 S.W.2d 180, 188.[4] Relators sought review of this issue in the application for writ of error in *Lee I*, but we did not grant on that point and the *Lee I* opinion did not mention, much less award, attorney's fees. Thus, arguably, the court of appeals' holding on attorney's fees is the law of the case. *See Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex.1978); *Cobb v. Robertson*, 99 Tex. 138, 87 S.W. 1148, 1149 (1905). Although the application of this doctrine is left to the discretion of this Court, the majority refuses to explain procedurally how it reached

the attorney's fees issue in a writ of mandamus context. The majority also refuses to explain to the people of Houston, the bench and the bar why the doctrine of law of the case does not govern this issue, and more importantly, why recovery of attorney's fees from the City is not barred by the doctrine of governmental immunity.

PHILLIPS, C.J., and HECHT and CORNYN, JJ., join this opinion.

---

3. The operation of a police department is governmental function. *See Burnett v. City of Houston*, 442 S.W.2d 919, 920 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd).

4. Relators' argument for attorney's fees was based on *statutory waiver* of sovereign immunity. For the Legislature to waive the State's sovereign immunity, it must do so in clear and unambiguous language. *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980); *Waugh v. City of*

*Dallas*, 814 S.W.2d 492, 497 (Tex.App.—Dallas 1991, writ denied). The Declaratory Judgment Act contains no explicit waiver of sovereign immunity, such as those found in the Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.-001–.109, and the Whistleblower's Act, TEX.REV. CIV.STAT.ANN. ART. 6252–16a. Thus, the court of appeals correctly held that sovereign immunity had not been waived.