

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00160-CV

## IN RE PETER AND CAMELLA SCAMARDO, FLP

### Original Proceeding

### No. 10-17-00234-CV

**PETER AND CAMELLA SCAMARDO, FLP,**

**Appellant**

**v.**

**3D FARMS, A GENERAL PARTNERSHIP,**
**AND FRANK DESTEFANO, TRUSTEE,**
**SAM F. DESTEFANO TESTAMENTARY TRUST,**

**Appellees**

From the 82nd District Court
Robertson County, Texas
Trial Court No. 12-06-19093-CV

## MEMORANDUM OPINION

This case involves the entry of a mandatory injunction and the assessment of costs in a trespass case. In its petition for writ of mandamus in appellate cause number 10-17-00160-CV, relator, Peter and Camella Scamardo, FLP ("Scamardo"), contends that the trial court abused its discretion by disregarding this Court's mandate in a prior proceeding and permitting real party in interest, 3D Farms, a general partnership, and Frank DeStefano Trustee, Sam F. DeStefano Testamentary Trust (collectively "3D Farms"), to maintain a trespassing encroachment on Scamardo's property. In a concurrently-filed appeal in appellate cause number 10-17-00234-CV, Scamardo contends that the trial court abused its discretion by disregarding this Court's mandate and failing to tax costs against appellees, 3D Farms. After reviewing both filings, we deny Scamardo's mandamus petition and affirm the judgment of the trial court.

## I. BACKGROUND

As noted above, this is not the first time we have addressed this dispute. *See generally Peter & Camella Scamardo, FLP v. 3D Farms*, No. 10-15-00163-CV, 2016 Tex. App. LEXIS 149 (Tex. App.—Waco Jan. 7, 2016, pet. denied) (mem. op.) ("*Scamardo I*"). In *Scamardo I*, we noted that the properties of 3D Farms and Scamardo are adjacent to one another and that the crux of the dispute was that 3D Farms built an irrigation canal along the common boundary between the properties that encroached on Scamardo's property. *Id.* at *1. Because of the trespass, Scamardo filed suit, asserting trespass and Texas Water Code violations. *Id.* at **1-2. The jury concluded that 3D Farms trespassed on Scamardo's

property, but that Scamardo consented to the trespass. *Id.* at *2. Additional findings were made, including a negative finding on Scamardo's claims under the Texas Water Code and a proportionate-responsibility finding, among other things. *Id.* Based on the jury's findings, the trial court entered a take-nothing judgment against Scamardo. *Id.*

On appeal, Scamardo narrowed its issue to the sufficiency of the evidence supporting the jury's consent finding. *Id.* at *3. We concluded that the evidence relied upon by 3D Farms to prove consent was "so weak as to do no more than create a mere surmise or suspicion and, in legal effect, is no evidence." *Id.* at *11. Accordingly, we set aside the jury's consent finding and entered the judgment that the trial court should have rendered—that Scamardo was entitled to judgment on the trespass claim. *Id.* at **11-13. However, Scamardo requested on appeal that we enter a mandatory injunction requiring 3D Farms to remove, at their cost and within thirty days of our judgment, the encroachment from Scamardo's property and restore the property to its condition immediately prior to the trespass. *Id.* at *12. We noted that this Court is not authorized to enter a mandatory injunction under these circumstances. *Id.* at *13. As such, we remanded the matter to the trial court with instructions to enter a mandatory injunction in favor of Scamardo and to consider Scamardo's request for costs of court. *Id.*

3D Farms unsuccessfully appealed our judgment to the Texas Supreme Court. *See generally Peter & Camella Scamardo, FLP v. 3D Farms*, No. 16-0241, 2016 Tex. LEXIS 682 (Tex. Aug. 12, 2016). Thereafter, on October 11, 2016, we issued the mandate in this

matter. Scamardo moved the trial court to enter judgment in their favor in conformance with our mandate. Specifically, Scamardo requested that the trial court enter "a mandatory injunction ordering 3D Farms to remove the encroaching embankment, at 3D Farms' sole cost, and to return the Scamardos' land to its pre-trespass condition," as well as tax costs against 3D Farms. In a response, 3D Farms noted that, among other things, Scamardo never asked the jury to find the scope of the alleged trespass and that our mandate did not create a ministerial duty to disregard unchallenged jury findings concerning the Water-Code claims.

The trial court conducted two hearings. At these hearings, 3D Farms argued that any injunction must be specific enough to be enforceable by contempt. Scamardo, on the other hand, contended that our mandate specifically instructed the trial court to enter a mandatory injunction in favor of Scamardo, not make a fact finding as to the scope of the trespass. Ultimately, the trial court issued an injunction requiring 3D Farms to remove, within sixty days from the date of the judgment, "from the Scamardo FLP's property 6 inches of dirt at the property line between the FLP's property and 3D Farms' property and from or between the elm snag and the railroad tie, both of which are well known and established landmarks." The trial court also ordered that the parties bear their own costs in this matter and entered findings of fact and conclusions of law. Unhappy with the trial court's rulings, Scamardo filed its mandamus petition and appeal.

## II.   SCAMARDO'S MANDAMUS PETITION

In their sole issue in their mandamus petition, Scamardo contends that the trial court abused its discretion when it disregarded our mandate and permitted 3D Farms to maintain the trespassing encroachment on Scamardo's land.  More specifically, Scamardo asserts that the trial court had a ministerial duty to strictly adhere to our mandate, which, as Scamardo argues, required entry of a mandatory injunction that ordered 3D Farms to remove each and every part of the embankment that encroached on Scamardo land.

Mandamus is available to correct a clear abuse of discretion or violation of a legal duty imposed by law.  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Additionally, relator must establish that there is no other adequate remedy at law.  *Id.* When the trial court's discretion is addressed to a factual issue, the relator must establish that the trial court's decision was contrary to the only decision reasonable under the circumstances.  *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).  A trial court has no discretion to determine the applicable law, and the trial court's failure to apply the law correctly will constitute an abuse of discretion.  *Walker*, 827 S.W.2d at 839-40.

"When the trial court clerk receives the mandate, the appellate court's mandate must be enforced."  TEX. R. APP. P. 51.1(b).  A district court has no discretion to interpret an appellate court's mandate.  *Schliemann v. Garcia*, 685 S.W.2d 690, 692 (Tex. App.—San Antonio 1984, orig. proceeding).  A trial court's failure or refusal to comply with a court

of appeals mandate is an abuse of discretion. *Lee v. Downey*, 842 S.W.2d 646, 648 (Tex. 1992) (orig. proceeding). A court of appeals may issue mandamus relief to enforce compliance by the trial court with its mandate to enter a particular judgment, and the appellate court retains jurisdiction until the judgment ordered has been entered. *Curtis v. Nobles*, 588 S.W.2d 687, 688 (Tex. App.—Amarillo 1979, orig. proceeding).

In analyzing the validity of Scamardo's assertions regarding the trial court's actions after the issuance of our mandate, we must examine what we did in *Scamardo I*. In particular, we issued the mandate in *Scamardo I* on October 11, 2016. The mandate clearly referenced the *Scamardo I* judgment, which provided the following, in relevant part:

> This cause came on to be heard on the transcript of the record of the Court below, and the same being considered, because it is the opinion of this Court that there was error in the judgment, it is ordered, adjudged and decreed by the Court that the judgment be reversed and judgment rendered in favor of appellant Peter and Camella Scamardo, FLP, as to its trespass claim. However, we remand this cause for entry of a mandatory injunction in favor of appellant and for consideration of appellant's request for court costs.

But, as noted in our opinion in *Scamardo I*, we arrived at the aforementioned conclusion to remand for entry of a mandatory injunction and consideration of court costs based, in part, on Texas Rules of Appellate Procedure 43.2(d) and 43.3(a)—both of which contemplate a remand to the trial court for further proceedings. *See* TEX. R. APP. P. 43.2(d) (providing that a court of appeals may "reverse the trial court's judgment and remand the case for further proceedings"), 43.3(a) (stating that, when reversing a trial court's

judgment, the appellate court must render the judgment that the trial court should have rendered except when a remand is necessary for further proceedings); *see also Scamardo I*, 2016 Tex. App. LEXIS 149, at *13. Further proceedings were necessary because we lack authority to enter the mandatory injunction requested by Scamardo. *See, e.g., Scamardo I*, 2016 Tex. App. LEXIS 149, at **12-13.

Contrary to the arguments of Scamardo, the trial court retained a reasonable amount of discretion in entering the ordered mandatory injunction on remand in favor of Scamardo. *See Russell v. Russell*, 478 S.W.3d 36, 42 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.) (noting that the trial court's jurisdiction on remand is limited to the issues specified in the mandate and the scope of the mandate is determined by referring to both the court of appeals's opinion and the mandate itself); *see also In re Castle Tex. Prod. L.P.*, No. 12-17-00178-CV, 2017 Tex. App. LEXIS 7124, at **12-13 (Tex. App.—Tyler July 31, 2017, orig. proceeding) ("Even when remand is limited, the trial court retains a reasonable amount of discretion to comply with an appellate court mandate."). And unfortunately, in *Scamardo I*, we could not provide any more specificity in our instructions to the trial court regarding the mandatory injunction because the record did

not reflect that Scamardo requested or obtained a finding from the jury regarding the scope of the trespass.[1]

In any event, although we did render the judgment the trial court should have rendered on the consent finding in *Scamardo I*, the fact that we remanded the proceeding to the trial court to enter a mandatory injunction and consider Scamardo's request for court costs indicates that this is not a Rule 51 ministerial-duty case like the *Hix* appeals from this Court. *See* TEX. R. APP. P. 51.1(b) (providing that an appellate court's mandate must be enforced—without further order from the trial court—if the appellate court: (1) affirms the trial court's judgment; (2) modifies the trial court's judgment and affirms that judgment as modified; or (3) renders the judgment the trial court should have rendered); *Hix v. Robertson*, 211 S.W.3d 423 (Tex. App.—Waco 2007, pet. denied) (modifying the trial court's judgment and affirming as modified); *see also In re Robertson*, No. 10-09-00005-CV, 2009 Tex. App. LEXIS 2641, at *6 (Tex. App.—Waco Apr. 15, 2009, orig. proceeding) (mem. op.) ("Instead of enforcing our judgment when it received our mandate, the trial court, upon Hix's motion, stayed the execution of the judgment. By staying the

---

[1] Contrary to Scamardo's contention, we are not convinced that the purported trespass is obvious. Essentially, what we are addressing in this trespass case are piles of dirt along a portion of the common boundary between the parties' properties. The record contains testimony that there was an earlier trespass by Scamardo when it built an irrigation canal in the same area. What this means is that the dirt at issue in this matter may indeed be some of the same dirt that the Scamardos purportedly moved to the property of 3D Farms during the alleged previous trespass. Nevertheless, the nature of dirt—in that it is comprised of millions of minute particles that can be easily moved by human and natural forces, such as wind and water—highlights the need for a determination of the scope of the trespass.

enforcement of the judgment, the trial court refused to comply with our mandate. The trial court had no discretion to refuse to enforce the mandate of this Court.").

In addition to the foregoing, Scamardo did not address the adequate-remedy-at-law prong in its mandamus petition because it relied solely on the ministerial-duty argument—an argument that we have rejected. Furthermore, we note that Texas courts have held that a post-judgment order that acts in the nature of a mandatory injunction that resolves property rights—something that the mandatory injunction in this case does—is appealable. *See Jack M. Sanders Family P'ship v. Roger T Fridholm Revocable Living Trust*, 434 S.W.3d 236, 242 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("A post-judgment order, however, may be appealable if an appeal is statutorily authorized or if the order has the nature of a mandatory injunction that resolves property rights. . . . A post-judgment order operates as a mandatory injunction when it resolves property rights and imposes obligations on the judgment creditor or interested third parties."); *see also In re Doe*, 397 S.W.3d 847, 849 (Tex. App.—Fort Worth 2013, orig. proceeding) ("When, however, a post-judgment order acts in the nature of a mandatory injunction that resolves property rights, it may be appealable." (citing *Schultz v. Fifth Judicial Dist. Court of Appeals*, 810 S.W.2d 738, 740 (Tex. 1991) (orig. proceeding), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114, 124-25 (Tex. 2004) (orig. proceeding) (holding that a turnover order that resolved property rights and acted "in the nature of a mandatory injunction"

was appealable))). Accordingly, because Scamardo did not satisfy both prongs required to obtain mandamus relief, we deny its petition for writ of mandamus.

## III. SCAMARDO'S APPEAL

On appeal, Scamardo raises two issues. First, Scamardo contends that the trial court abused its discretion when it disregarded this Court's mandate, ignored this Court's limited remand, decided an issue that had already been litigated to finality, and entered a final judgment that required only a partial removal of the encroaching trespass. In its second issue, Scamardo asserts that the trial court abused its discretion when it penalized Scamardo by refusing to tax costs against 3D Farms.

### A. The Mandatory Injunction

As noted earlier, in *Scamardo I*, we reversed a take-nothing judgment on Scamardo's trespass claim, finding insufficient evidence to support the jury's consent finding. 2016 Tex. App. LEXIS 149, at *11. We also remanded this matter to the trial court for further proceedings to enter a mandatory injunction in favor of Scamardo. *See id.* at *13. The trial court conducted two hearings and entered a mandatory injunction to remove the trespass established by the uncontroverted testimony of Scamardo and Scamardo's expert at trial, among others. Specifically, the trial court defined the trespass as follows: "from the Scamardo FLP's property 6 inches of dirt at the property line between the FLP's property and 3D Farms' property and from or between the elm snag and the railroad tie, both of which are well known and established landmarks."

On appeal, Scamardo argues that our mandate did not authorize the trial court to determine the scope of the trespass; rather, the trial court should have simply ordered 3D Farms to remove the trespass without further specificity. In response to this contention, 3D Farms directs us to Texas Rule of Civil Procedure 683, which provides, in pertinent part:

> *Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document*, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

TEX. R. CIV. P. 683 (emphasis added). Furthermore, because a person who violates a trial court's injunction may be held in contempt, the language enjoining a party should be clear so the parties subjected to such prohibitions are not misled. *See id.* at R. 692 (providing that a party who disobeys an injunction may be punished by the court for contempt); *see also Dickerson v. Acadian Cypress & Hardwoods, Inc.*, No. 09-13-00299-CV, 2014 Tex. App. LEXIS 3889, at **18-19 (Tex. App.—Beaumont Apr. 10, 2014, no pet.) (mem. op.). Therefore, based on the foregoing rules, the trial court had a duty to craft a mandatory injunction that is specific and clear so the parties subjected to the injunction— 3D Farms—are not misled. *See* TEX. R. CIV. P. 683, 692; *see also Dickerson*, 2014 Tex. App. LEXIS 3889, at **18-19.

However, despite the foregoing, Scamardo contends that Rule 683 only applies to temporary injunctions, not mandatory injunctions like the one at issue here. We are not persuaded by this argument. First, Rule 683 clearly states that "[e]very order granting an injunction," not just temporary injunctions, shall "set forth the reasons for its issuance" and "shall be specific in terms." TEX. R. CIV. P. 683; *see MCI Sales & Serv. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010) ("'A question of statutory construction is a legal one which we review de novo, 'ascertaining and giving effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words.'" (quoting *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007))). Additionally, this Court, in *Halverson*, has applied Rule 683 to an injunction similar to the one at issue. *See, e.g., Halverson v. Podlewski*, No. 10-05-00303-CV, 2006 Tex. App. LEXIS 8814, at **10-11 (Tex. App.—Waco Oct. 11, 2006, no pet.) (mem. op.) ("Rule of Civil Procedure 683 provides in pertinent part that an order granting an injunction shall be specific in terms. To satisfy this requirement, an injunction order must be as precise as possible to inform the defendant of the acts he is restrained from doing. The defendant should not be required to draw inferences or conclusions about which persons may differ to determine what conduct is prohibited. Nevertheless, the injunction must be stated in broad enough terms to prevent repetition of the conduct sought to be enjoined." (internal citations & quotations omitted))[2].

---

[2] Similar to the facts here, in *Halverson*, we further noted that:

And finally, we are not persuaded by the cases relied upon by Scamardo in support of its contention that Rule 683 does not apply to any permanent injunction. *See Stephens v. City of Reno*, 342 S.W.3d 249, 254 (Tex. App.—Texarkana 2011, no pet.); *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 892 (Tex. App.—Dallas 2004, pet. denied); Shields v. State, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.); *Spinuzzi v. Town of Corinth*, 665 S.W.2d 530, 534 (Tex. App.—Fort Worth 1983, no writ). Each of these cases primarily address the reasons-for-issuance requirement of Rule 683, not the specificity requirement, which, as noted above, was addressed in this Court's binding precedent in *Halverson*. *See, e.g.*, 2006 Tex. App. LEXIS 8814, at **10-11. And we are not inclined to overrule our prior decision in *Halverson* at this time.

Next, Scamardo complains about the specificity of the trial court's injunction. In particular, Scamardo argues that the trial court improperly decided an issue that had been litigated to finality and entered a final judgment that required only partial removal

---

> Here, Podlewski presented evidence about Halverson constructing barriers (i.e., dams) across the pond which caused it to dry up on Podlewski's side. Podlewski also presented evidence about Halverson digging on his property (i.e., recontouring) in a manner which would affect the flow of water onto Podlewski's land. The court enjoined Halverson from continuing to engage in such conduct.

*Halverson v. Podlewski*, No. 10-05-00303-CV, 2006 Tex. App. LEXIS 8814, at *11 (Tex. App.—Waco Oct. 11, 2006, no pet.) (mem. op.). In addition, the Tyler Court of Appeals has also applied Rule 683 to an injunction similar to the one at issue here. *See Vaughn v. Drennon*, 202 S.W.3d 308, 316 (Tex. App.—Tyler 2006, pet. denied) (sustaining a challenge to a mandatory injunction compelling the Vaughns to "lower the elevation of their land between eight (8) feet and twenty (20) feet east of Defendants' west boundary line at least three (3) feet wide, the bottom of which to be eighteen (18) inches lower in elevation than that of the land along the Defendants' west boundary line perpendicular thereto" because it "does not contain sufficient detail under Rule 683 for the Vaughns to determine exactly what the court wants them to do.").

of the encroachment. First, we note that Scamardo is incorrect in arguing that the scope of the trespass has been litigated to finality. As noted earlier, Scamardo did not obtain a jury finding on the scope of the trespass, and furthermore, we are not convinced that the purported trespass is so obvious as to not require specific language in the injunction pursuant to Rule 683.

In its findings of fact, the trial court noted that: (1) "The parties agree no additional evidence should be received to determine the scope of 3D Farms' trespass"; and (2) "The parties agree that the Court should determine the scope of the 3D Farms' trespass from the record of the November 2014, trial, including testimony and exhibits." The following findings of fact, which are supported by the record evidence, are particularly instructive:

> 20. 3D Farms also pointed to a pre-existing (1988) survey—undisputed by the FLP—that showed a Scamardo-built ditch trespassed on 3D Farms' property. 3D Farms argued it repositioned the Scamardo ditch including its high bank back on FLP property.
>
> 21. Stewart Kling, a civil engineer and surveyor, testified as an expert witness for the FLP.
>
> 22. Kling prepared the 1988 survey.
>
> 23. Regarding the 1988 survey, Kling agreed that "the Scamardo ditch meandered onto—across the property line." (4RR55-56).
>
> 24. More particularly from the 1988 survey, Kling opined "approximately 2200 feet of the FLP ditch" was on 3D Farms' property and 3600 feet was "primarily on Scamardo." (4RR56; 4RR91)
>
> 25. Peter Scamardo agreed that, if the 1988 Kling survey is correct, he never moved the meandering Scamardo ditch back onto Scamardo property; "We didn't move it." (5RR56).

26. Robert Scamardo admitted the FLP's southern ditch trespassed onto DeStefano property, according to the 1988 Kling survey. He admitted the 30 foot ditch trespassed up to 20 feet in some areas. He admitted the ditch had a southern high bank, which also trespassed onto DeStefano property. He admitted the FLP ditch, including its high bank, belongs on the FLP's property.

27. Robert Scamardo also admitted Dean Schieffer never worked on the Scamardo property from the railroad tie where the fence begins all the way up to the east up to the Little Brazos River. He further admitted that photographs showed a high bank on the Scamardo ditch from the railroad tie to the east all the way to the Little Brazos River. He also admitted the same high bank ran all the way from the railroad tie to the west and up to the Elm snag. 3RR120-23.

28. The FLP presented Alfred Paine as one of its expert witnesses. Mr. Paine admitted he could see the original elevation on the property line, for the most part, all the way down the fence from the railroad tie to the Little Brazos River. He testified the fence is 3600 feet long and there was an "insignificant" amount of fill (dirt) placed along the fence. He admitted the elevation at the fence line is significantly higher than the Scamardo field to the north. He specifically stated the southern embankment of the Scamardo ditch along the entire fence line is a "couple of feet" higher than the property to the north. He further admitted the embankment along the fence existed before Dean Schieffer did anything on 3D Farms' property. Finally, he admitted that the same high bank that existed along the fence also existed all the way from the end of the fence (at the railroad tie) to the Elm snag, at some point in time. 4RR142-150.

. . .

30. Therefore, I find before 3D Farms' excavation of an irrigation canal in 2011, there was an FLP ditch that had meandered onto 3D Farms property and approximately 2200 feet of that ditch was on 3D Farms property by as much as 20 feet.

31. Kling also submitted a "Survey Report" in January 2013 directed to both the alleged Trespass and the alleged violation of the Texas Water Code.

32. In his report, Kling concluded, *inter alia*, that "there was been a trespass of approximately 40% of the embankment onto the Scamardo property." (1/18/13 Kling Report).

. . .

35. Stewart Kling's testimony about a 40% encroachment is inconsistent with Robert Scamardo and Alford Paine's observations and admissions that the FLP ditch and its southern high bank belong on FLP property. Kling's testimony also ignores the notion that the FLP ditch and its corresponding southern high bank were repositioned onto FLP property.

36. Neither at trial nor in his report did Kling provide any more specific description of the trespass, whether by metes and bounds or other fixed markers.

37. Neither at trial nor in his report did Kling state or suggest a remedy or "cure" of the trespass.

. . .

39. Kling made reference to an amount of trespassing dirt with respect to the fence (which runs easterly from the railroad tie to the Little Brazos River). More particularly, the Kling testimony was:

> Q.    How much dirt do you claim that Dean Schieffer piled at the base of this fence?
>
> A.    A half a foot, maybe a little bit more.
>
> Q.    That means if it's 2 foot high here at the fence, then—then there was a foot and a half height differential there before Dean ever did a single thing out there, correct?
>
> A.    If it's 2 feet high, yes, then Schieffer was not responsible for a majority of that.

40. The Court finds the testimony about the FLP ditch and its high bank belonging on FLP property instructive.

41. The Court also finds Kling's testimony about the amount of dirt "piled at the base of the fence," which according to him was six inches, likewise instructive.

42. When 3D Farms dug the irrigation canal, it repositioned the Scamardo ditch onto Scamardo property where, according to FLP witnesses, it always belonged and currently belongs. 3D Farms likewise repositioned the southern high bank of the FLP ditch.

43. The FLP points to the January 2013 survey of the Irrigation Channel, admitted as Plaintiff's Exhibit 37, as an indication of the location of the trespass.

44. However, the January 2013 survey is a "Topographical Map."

45. Kling did not rely upon this topographical map as any indication of the location of the trespass.

. . .

49. These witnesses did not rely upon the topographical map as evidence of the location or quantity of trespassing dirt.

50. And, the topographical map itself gives no indication of the location or quantity of trespassing dirt.

51. It is clear from the photos and charts accompanying the Kling report, and the FLP concedes, the excavated canal is completely on 3D Farms' property.

52. Those same photos and charts graphically illustrate that the berm or embankment of the canal, that borders 3D Farms and FLP property is on 3D Farms' property.

53. Robert Scamardo testified that 3D Farms' excavator did not do any work to "the left [on FLP property] of that railroad tie" (3 RR121) and the railroad tie "has been there forever."

54. Peter Scamardo testified that the segment of canal at issue went up to the elm snag (5RR43); 3D Farms' excavator did not do any work near the elm snag (5RR44); "the elm snag is ancient" (5RR47).

55. I find that when 3D Farms excavated the canal on their property, some of the excavated dirt fell across the property line. I also find when 3D Farms repositioned the FLP ditch, some extra dirt was placed across the property line.

56. These findings are consistent with the jury's determination in Question No. 1 that there was a trespass.

57. I find that one-half foot of dirt moved across the property line during the excavation of the canal and repositioning of the FLP ditch, but only between the railroad tie and the elm snag.

58. I find that some of the dirt that moved across the property line during the excavation was, in fact, dirt that originated on the property of FLP.

Though Scamardo argues that the trial court did not have authority to make these findings, we note that, because Scamardo did not obtain a jury finding on the scope of the trespass, the injunction sought by Scamardo would not be enforceable by contempt because it was not specific in its terms. *See* TEX. R. CIV. P. 683; *see also Halverson*, 2006 Tex. App. LEXIS 8814, at **10-11. In other words, these were necessary findings for Scamardo to obtain any sort of injunction. Furthermore, the evidence used by the trial court was obtained primarily from Scamardo's own experts and witnesses, and we believe that these findings provide sufficient specificity to comply with Rule 683. *See* TEX. R. CIV. P. 683; *see also Halverson*, 2006 Tex. App. LEXIS 8814, at **10-11. And to the extent that Scamardo complains that the trial court's injunction permits part of the encroachment to remain, we point out that Scamardo's own expert, Kling, noted that Dean Schieffer, 3D

Farms' excavator, was only responsible for "[a] half a foot, maybe a little bit more" of the embankment and that Schieffer was not responsible for the majority of the embankment that is two feet high. Moreover, it would be improper to rely solely on Kling's January 2013 survey because it is a topographical map that Kling did not rely upon as indicating the location of the trespass or the quantity of trespassing dirt.[3]

Based on the foregoing, we cannot say that the trial court abused its discretion in entering the complained-of mandatory injunction, nor are we inclined to hold that the trial court disregarded this Court's mandate by making findings to determine, with specificity, the scope of the trespass subject to the mandatory injunction. *See Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998) (noting that we review a decision to grant a permanent injunction for abuse of discretion); *Vaughn*, 202 S.W.3d at 313 (same); *see also Robertson v. Hix*, 383 S.W.3d 170, 173 (Tex. 2012) ("A trial court's failure or refusal to comply with a court of appeals mandate is an abuse of discretion." (citing *Lee*, 842 S.W.2d at 648)). Accordingly, we overrule Scamardo's first issue.

---

[3] We also emphasize that, in *Scamardo I*, we made no specific determination as to the scope of the trespass. We merely noted that "the parties did not dispute that the embankment for the canal encroached on appellant's [Scamardo] land." No. 10-15-00163-CV, 2016 Tex. App. LEXIS 149, at **4-5 (Tex. App.—Waco Jan. 7, 2016, pet. denied) (mem. op.). This does not mean that the entire embankment encroached. Indeed, Scamardo's trial counsel acknowledged at one of the hearings on the mandatory injunction that: "With respect to the amount of the embankment that encroaches, it's true, and we've never disputed this fact, that the whole embankment does not encroach. Again, Kling's testimony and Kling's Report tell us how much. It gives us the guidance."

**B.      Costs**

In its second issue, Scamardo complains that the trial court abused its discretion by refusing to tax costs against 3D Farms simply because Scamardo did not prevail on both of the claims raised in the trial court. The trial court has discretion in ruling on costs under Texas Rule of Civil Procedure 131. *See* TEX. R. CIV. P. 131; *see also Hill v. Leon County*, No. 10-07-00301-CV, 2008 Tex. App. LEXIS 9206, at *7 (Tex. App.—Waco Dec. 10, 2008, no pet.) (mem. op.). "We review a trial court's award of costs under an abuse of discretion standard." *Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 630 (Tex. App.—Dallas 2004, pet. denied) (citing *Hasty Inc. v. Inwood Buckhorn J.V.*, 908 S.W.2d 494, 502 (Tex. App.—Dallas 1995, writ denied)). Absent an abuse of discretion, an appellate court will not reverse a trial court's assessment of costs. *Id.* Also, unless the record demonstrates an abuse of discretion, the trial court's assessment of costs for good cause should not be disturbed on appeal. *Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex. 1985).

Texas Rule of Civil Procedure provides that a "successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. For purposes of Rule 131, "[a] 'successful party' is 'one who obtains judgment of a competent court vindicating a civil right or claim." *Henry v. Masson*, 453 S.W.3d 43, 50 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *City of Houston v. Woods*, 138 S.W.3d 574, 581 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *see Hasty Inc.*, 908 S.W.2d at 502. However, the trial "court may, for good cause, to be stated on the

record, adjudge the costs otherwise than as provided by law or these rules." TEX. R. CIV. P. 141; *see Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001) ("Taxing costs against a successful party in the trial court, therefore, generally contravenes Rule 131. Yet the trial court's ruling on costs under Rule 141 is permitted within its sound discretion, although that discretion is not unlimited. . . . Good cause is an elusive concept that varies from case to case. Typically though, good cause has meant that the prevailing party unnecessarily prolonged the proceedings, unreasonably increased costs, or otherwise did something that should be penalized.").

In *Scamardo I*, we remanded this proceeding to the trial court to consider Scamardo's request for costs of court. 2016 Tex. App. LEXIS 149, at *13. As noted in the trial court's findings of fact, Scamardo submitted a cost bill for $4,535.29, including four depositions, the petition filing fee, the jury demand, and a mediation fee. The trial court stated that Scamardo prevailed on its trespass claim, but lost on its claims pertaining to alleged violations of the Water Code. Scamardo did not appeal the jury's findings as to the alleged Water-Code violations, and the trial court concluded that Scamardo's trespass claim is "*de minimis*." (Emphasis in original). Accordingly, the trial court concluded that, because Scamardo did not prevail on its more significant claim—the Water-Code claim, and because the trespass is "*de minimis*," there is good cause for the parties to bear their own costs in this cause. (Emphasis in original).

Texas Rule of Civil Procedure 139 states the following about how trial-court and appellate-court costs should be awarded on appeal:

> When a case is appealed, if the judgment of the higher court be against the appellant, but for less amount than the original judgment, such party shall recover the costs of the higher court but shall be adjudged to pay the costs of the court below; if the judgment be against him for the same or a greater amount than in the court below, the adverse party shall recover the costs of both courts. If the judgment of the court above be in favor of the party appealing and for more than the original judgment, such party shall recover the costs of both courts; if the judgment be in his favor, but for the same or a less amount than in the court below, he shall recover the costs of the court below, and pay the costs of the court above.

TEX. R. CIV. P. 139. Applying Rule 139, this Court determined that an appellant who prevailed on one of four substantive claims she raised on appeal should be awarded "only twenty-five percent of the trial court costs and assess seventy-five percent of the trial court costs against her." *Bryant v. Lucent Techs., Inc.*, 175 S.W.3d 845, 852 (Tex. App.—Waco 2005, pet. denied).

Following *Bryant*, we cannot conclude that the trial court abused its discretion in determining that the parties should bear their own trial-court costs.[4] *See id.* Scamardo prevailed on what the trial court concluded is a *de minimis* trespass claim, but Scamardo lost on the more significant Water-Code claim. The trial court explained this in its findings of fact and conclusions of law. Moreover, the trial court's explanation in its

---

[4] This is not to say, however, that Scamardo was not entitled to recover its appellate costs in *Scamardo I*. In the first iteration of this case, Scamardo clearly prevailed on appeal and, thus, was entitled to recover appellate costs against 3D Farms under Rule 131. *See* TEX. R. CIV. P. 131. However, because Scamardo is not the prevailing party in this appeal, appellate costs should be assessed against Scamardo. *See id.*

findings of fact and conclusions of law satisfies Rule 141's requirement of the trial court to state on the record its good-cause determination for assessing costs differently that prescribed by Rule 131. *See* TEX. R. CIV. P. 131, 141. Accordingly, we overrule Scamardo's second issue.

## IV. CONCLUSION

Based on the foregoing, we deny Scamardo's petition for writ of mandamus and affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
(Chief Justice Gray dissenting with a note)*
Mandamus denied and appeal affirmed
Opinion delivered and filed March 28, 2018
[CV06]

*(Chief Justice Gray dissents. A separate opinion will not issue.)

